# FREDERICK WILLIAM APPEL *v.* MARGARET APPEL.

## [No. 78, October Term, 1931.]

*Decided January 14th, 1932.*

6

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*W. LeRoy Ortel,* with whom was *T. Bayard Williams* on the brief, for the appellant.

*James Fluegel,* with whom was *Harry C. Kalben* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

The bill of complaint in this case, filed by the appellee against the appellant, is for a divorce *a mensa et thoro.* The substantial charges are that the defendant beat and abused the plaintiff, and cursed her, and used such vile epithets towards her that it was impossible for her to continue to live with him, and that "she was compelled, to avoid being seriously injured about her head, limbs and body, to leave her home on the 8th day of December, 1930"; that he, wanting to get rid of her, purposely abused her, threatened to throw her out of the window, made false accusations against her to gratify his feelings of spite, stated that he would poison her if it were not for the law, and drove her from him without justification on the 8th day of December, 1930, thereby abandoning and deserting her.

The prayer of the bill is for divorce *a mensa et thoro,* permanent alimony of fifteen dollars per week, and counsel fee. The plaintiff at the time of the hearing was twenty-one years of age, and the defendant twenty-two. They were married June 24th, 1930, and the bill of complaint was filed on December 9th, 1930. It appears from the testimony that they both were afflicted with violent tempers and that they began to quarrel soon after their marriage. She testified that he beat her on three occasions, August 30th, October 2nd, and December 8th; that he drank too much and came home drunk three or four times a week (Mrs. Frizzel testified that she twice saw defendant brought home drunk); that he

ordered her out of the home two or three times; that he threatened to poison her, and said he wanted to get rid of her; that on one occasion he threatened to throw her out of the window, and she screamed for the lady next door, Mrs. Frizzel, who came over; that the beating on December 8th grew out of his demand for some insurance policies of his in her possession; that she was darning his socks at the time and told him to wait until she cut the thread and she would get them for him; that he went upstairs, opened the bureau drawers, and started throwing everything out; that she came upstairs and asked what he wanted to do that for, and as she started out he grabbed her and sprained her arm; that he then put her in his car and carried her to within a half block of her mother's and told her to get out and walk to her mother's; that he frequently twisted her arm and punched her; that after the beating of December 8th, Dr. Titlow bandaged her arm and Dr. Riland attended her for several weeks. She also testified to abusive language and vile epithets used by him towards her on a number of occasions. It appears that, a day or two after December 8th, she had furniture moved from three rooms and stored, but he promptly recaptured it. No one except the parties appear to have been present at any of these quarrels, except one, but it is apparent from the testimony of both that they were of frequent occurrence. There is some corroboration of plaintiff as to defendant's attempt to throw her out the window by Mr. and Mrs. Frizzell. And plaintiff's testimony as to the beating on December 8th is corroborated in the testimony of Drs. Titlow and Riland and several other witnesses as to plaintiff's injured condition immediately after this occurrence. Dr. Riland testified that she came to him on December 9th; that he found bruises on the back of the neck, left shoulder, and left arm, and that the arm was badly sprained and swollen; that he saw her on the 9th, 11th, 13th, 16th, and 22nd of December, "and there was still some soreness and swelling there but it had been relieved somewhat."

As was said in *Heinmuller v. Heinmuller,* 133 Md. 491, 494, 105 A. 745, the object of the provision, in section 4 of article 35 of the Code, that no divorce shall be granted upon the testimony of the plaintiff alone, is to prevent collusion, and when the whole case precludes any possibility of collusion, the corroboration need be slight. And in *Bowersox v. Bowersox,* 157 Md. 474, 480, 140 A. 266, 267, we quoted with approval from *Orens v. Orens,* 88 N. J. Eq. 34, 102 A. 436. "The corroboration of a petitioner's testimony, required by law, in order that a divorce may be decreed, need not be testimony given by another or other witnesses to all of the same identical facts to the minutest particulars, but only their giving such facts in evidence as already testified to by petitioner, or such circumstances tending to establish them, as renders petitioner's testimony so much more probable as to be legally acceptable, and which serves to empower the judge to accept the truth of the petitioner's whole story."

The testimony of plaintiff as to the beating, and as to abusive language and vile epithets and threats, was denied by defendant. His explanation of the sprained arm was that, during the quarrel on December 8th, plaintiff fell, and the injury to the arm resulted from the fall. His version is that she attacked and wounded him, and he was defending himself. She admitted that she scratched him when he attacked her. The chancellor was in a better position than we could be to pass on the credibility of witnesses, and he evidently believed plaintiff, although he did not find her entirely blameless.

The argument of defendant is that there is no corroboration of plaintiff as to any of the beatings except the one on December 8th, and that, even if her account of that is accepted as true, a single act of violence is not enough to warrant a divorce.

We said in *Hastings v. Hastings,* 147 Md. at pages 177, 181, 127 A. 743, 745: "It must not be understood that in no case will a single act of violence constitute a ground of divorce *a mensa.* See *Levering v. Levering,* 16 Md. 213. It depends upon whether such single act indicates an in-

tention to do serious bodily harm, or is of such a character as to threaten serious danger in the future." See, also, *Martin v. Martin,* 159 Md. 46, 49, 149 A. 616, where the facts were not unlike those in the present case.

The conduct of defendant after the occurrence, and his indifference to his wife's condition, were certainly not promising for her future safety. According to defendant's own testimony, he never asked plaintiff to return to their home after he left her on the street to go to her mother's on the night of December 8th. He saw her on the 10th and she told him her arm was broken. Notwithstanding that, he never went to her mother's house to inquire for her, or showed the slightest desire for her to return to their home. On the contrary, on December 19th, he stored all the furniture, and rented the house as soon as he could find a tenant. We see no reason to disturb the finding of the chancellor.

Nor is there any force in the objection that the chancellor allowed her sixteen dollars a week alimony while in her bill she asked for only fifteen dollars. That was a matter for the chancellor to determine on the evidence. The suggestion by her in the bill of the amount to be allowed was an irregularity. The chancellor, from the evidence, estimated defendant's income to be about $3,000 a year, and on that basis the allowance was not unreasonable. Of course, it is subject to change if circumstances should warrant it.

*Decree affirmed, with costs to appellee.*