LEWIS E. JONES *v.* BERNICE P. JONES

[No. 93, October Term, 1945.]

*Decided April 12, 1946.*

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*D. Eugene Walsh* and *Vincent A. Tubman* for the ap-
pellant.

*Theodore F. Brown,* with whom was *A. Earl Shipley* on
the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

A husband appeals from a decree of a chancellor, dis-
missing his bill for a divorce *a vinculo,* filed on the ground
of abandonment. The case presents a situation where
the claimed abandonment was the refusal to continue
marital relations while the parties were living in the
same house. In some jurisdictions it is required that
such abandonment be notorious and known to the com-
munity in which the parties live. That is not the law
of this State, but the fact that it is the law elsewhere
emphasizes the difficulties of the ordinary proof in such
cases. It is very easy to set up such a claim if the par-
ties are in collusion, and where there is no defense the
testimony must be carefully scrutinized to see if the
facts are clearly proved. Where the case is contested,

as in the proceedings before us, the inherent difficulty of establishing the facts, does not relieve the complainant from furnishing the corroboration required by the statute. Code, 1939, Article 35, Sec. 4. It is true that where there is no possibility of collusion, only slight corroboration is necessary. *Heinmuller v. Heinmuller*, 133 Md. 491, 494, 105 A. 745; *Appel v. Appel,* 162 Md. 5, 158 A. 65; *Timanus v. Timanus,* 177 Md. 686, 10 A. 2d 322. However, the corroboration must be present.

We have recently had occasion in two cases to state the law applicable to the case before us. In *Wysocki v. Wysocki,* 185 Md. 38, 42 A. 2d 909, 910, the Court said: "It is equally well settled that the mere fact that the husband or wife ceases to occupy the bed or room in which they have been accustomed to sleep and thereafter occupies alone another room in the house, is not necessarily a withdrawal of the marital right from the other. The determining factor is the continuous refusal, without just cause or reason, to fulfill the marital obligation, and the burden is upon the plaintiff to prove such refusal." In *Miller v. Miller,* 185 Md. 79, 42 A. 2d 915, 917, are found the following statements: "The matrimonial offense of abondonment and desertion contains two inherent elements: (1) the ending of cohabitation, and (2) the intention of the offending party to desert." "The intention, coresponding to the *animus non revertendi* in the law of domicil, must be definite that the marital relation shall no longer exist."

The facts in the case before us are that the parties were married February 28, 1927, and had one child, now fifteen years old. The husband was a salesman for a time, but after 1929 did not travel. In that year, he and his wife came to Mount Airy to live in the home of the wife's mother, Mrs. Hipsley, where they remained until 1941. The husband operates a motion picture theatre in Mount Airy, and in 1941, while the Hipsley home was being remodeled, the family moved to an apartment over the theatre, where they still reside. Since August, 1944, the husband has been sleeping on the stage

in the theatre. The husband said that his wife refused to have intercourse with him in 1936, when they were occupying a room in the Hipsley home, and that he did nothing further about this situation until about a year and a half ago. In 1939, the husband talked to his brother-in-law, Horace Hipsley, about the matter. Hipsley later talked to both of the parties, and there was an apparent agreement of reconciliation. At that time the husband and wife were occupying separate rooms. After this conversation, the husband testified, the wife came into his room, but still refused him, and they never slept together afterwards. About the same time, the husband talked to the minister, but did not want the minister to do anything. Subsequently, in January of 1945, the minister was again consulted, and he talked to the wife. A local lawyer was also requested by the husband to talk to the wife. The daughter, in February of 1945, talked to the husband and tried to get him to come back to the apartment and live with his wife, but he said he could not come back and live under the same conditions. Then his wife came down and asked the same thing, and he declined to go back because, as he said, he told her she would not treat him right and he was not going back. This is the husband's own evidence.

The daughter was called as a witness for him, and said that her mother and father had been living in separate rooms continuously from November, 1939, when she had scarlet fever, and the husband moved into another room while the wife stayed with her. But shortly after she recovered from scarlet fever she asked her father, at the request of her mother, if he would come back, and he declined, and that she has asked him the same thing frequently without result during the past three years. Her mother went to the hospital in the fall of 1944, and her father told her that when she got out, she was not to come home. But there was no other place for her to go, and she was brought home by her brother. The clergyman was called as a witness for the plaintiff. He said he talked to the wife in the fall of 1944, in an effort

to get the parties together, and that the wife said she was perfectly willing. Knowing the husband's complaint of non-intercourse he asked the wife did that mean 100 per cent.; and she said it did. He communicated this to the husband, and the husband said in effect that he didn't believe it, and would be in worse shape if he tried it. Mr. Hipsley, the brother-in-law, was called as a witness for the plaintiff, and said that he talked to both of the parties several times, the last time about a year and a half ago. Each time he thought that it was agreed between all of them that there should be 100 per cent. cooperation in all respects. He also stated that the husband had said he had been stepping out a little, but the family knew about it. This was all the evidence on the refusal of cohabitation produced by the appellant. The wife testified that after the daughter had recovered from scarlet fever in 1939, her husband did not come back to her room, and when she went to his room, after they had moved to the apartment, her husband practically ordered her out, and she left.

It is neither necessary nor advisable to discuss at length all of the testimony in the case. What has been stated is all that was offered to corroborate the husband's claim. So far from corroborating it, it is, in effect, a denial. It tends to support the position of the wife that it was he, and not she, who was guilty of the abandonment, and that when the wife attempted to become reconciled with him and stated that she was willing to cooperate 100 per cent. in the family life, he declined. Under these circumstances the chancellor was correct in dismissing the bill, and his action will be affirmed.

*Decree affirmed, with costs.*