## MOWER *v.* MOWER
[No. 119, October Term, 1955.]

414

*Decided March 16, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Irvin S. Friedman,* with whom was *Sheldon A. Rubenstein* on the brief, for appellant.

*Morton H. Perry* for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This suit was instituted in the Circuit Court No. 2 of Baltimore City by Irene H. Mower against her husband, Nathan Mower, to obtain (1) a divorce *a mensa et thoro,* (2) alimony *pendente lite* and permanent alimony, (3) custody of their minor son and payments for his support and maintenance, and (4) counsel fee for her attorney.

The parties were married in Baltimore in February, 1940, and lived together for more than 14 years. At the time of the institution of the suit on September 14, 1954, and even at the time of the trial the parties were both residing in the house owned by complainant on Jonquil Avenue. Their son, who is over 11 years old, is mentally retarded and at the time of the trial was in the Rosewood State Training School in Baltimore County.

Complainant sought a divorce on the ground that her husband abandoned her bedroom on August 1, 1954. She complained that her husband "just picked himself up and walked out of the bedroom and took up sleeping quarters in the living room on the first floor."

Complainant's only witness was her niece, Mrs. Peggy Toback, who resides on Reisterstown Road, but who had been a frequent visitor in the home. Mrs. Toback testified that her aunt told her that she had tried "the best she could" to get along with defendant but that he was "a pretty cold person, and it was very difficult to live with him." She also testified that defendant told her that he had been sleeping on the first floor, and that "things had gone too far for reconciliation," but she added that he never gave any reason for leaving the bedroom.

Defendant testified that the reason why he was sleeping downstairs was that his wife made him nervous. He specifically complained that she had made it unpleasant for him when they were lying in bed by telling how wonderful other husbands were. He swore that he had no intention of returning to the bedroom. His explanation was: "You can't return to something where circumstances are so unpleasant that you can't lie in bed."

Defendant further testified that in 1953, after they had been living together for 13 years, they consulted attorneys and effected a reconciliation. Soon afterwards, however, the marriage began to deteriorate again. Finally on August 1, 1954, defendant left the bedroom and slept thereafter on the sofa in the living room. Complainant did not provide any meals for her husband. Both got their meals elsewhere. They seldom spoke to

each other. Neither made any further effort toward reconciliation. After the trial defendant moved out of the house.

On December 30, 1954, the Court ordered defendant to pay the sum of $6 per week to complainant as alimony *pendente lite.*

The chancellor doubted the story that the husband slept on the first floor. However, he was of the opinion that both parties were at fault, and that consequently neither party was entitled to a divorce. On June 28, 1955, he passed an order dismissing the bill of complaint, and directing defendant to pay to complainant's attorney the sum of $75 as counsel fee. Complainant appealed from that order.

The Maryland chancery statute provides that divorces *a mensa et thoro* may be decreed for the following causes: (1) cruelty of treatment, (2) excessively vicious conduct, and (3) abandonment and desertion. Code 1951, art. 16, sec. 34. In order to constitute abandonment and desertion as a ground for divorce, there must be a voluntary separation of one spouse from the other, or the refusal to renew a suspended cohabitation, without justification either in the wrongful conduct or the consent of the other. *Crumlick v. Crumlick,* 164 Md. 381, 165 A. 189; *Miller v. Miller,* 185 Md. 79, 84, 42 A. 2d 915.

It is unquestionably the law in this State that permanent refusal of either the husband or the wife to have sexual intercourse with the other spouse, from no consideration of health or other good reason, constitutes matrimonial desertion although the parties continue to live in the same house. *Fleegle v. Fleegle,* 136 Md. 630, 110 A. 889; *Jones v. Jones,* 186 Md. 312, 46 A. 2d 617; *Kelsey v. Kelsey,* 186 Md. 324, 326, 46 A. 2d 627; *Scheinin v. Scheinin,* 200 Md. 282, 290, 291, 89 A. 2d 609; *Lent v. Lent,* 202 Md. 240, 244, 96 A. 2d 14. It is understood, of course, that the mere fact that a husband ceases to occupy the room in which he and his wife have been accustomed to sleep and thereafter occupies alone another room in the house is not necessarily a withdrawal of marital right

from the wife which constitutes desertion within the meaning of the statute. It is only where it is without good reason that the husband leaves his wife and permanently refuses to have intercourse with her that the occupancy of another room constitutes desertion as a ground for divorce. *Ruckle v. Ruckle,* 141 Md. 207, 118 A. 472; *Wysocki v. Wysocki,* 185 Md. 38, 41, 42 A. 2d 909; *Jones v. Jones,* 186 Md. 312, 46 A. 2d 617. Moreover, the law is clear that the complainant who seeks a divorce has the burden of proving the allegation that the defendant refused to fulfill the marital duty. *Owings v. Owings,* 148 Md. 124, 128 A. 748; *Lent v. Lent,* 202 Md. 240, 245, 96 A. 2d 14.

In the case before us it was undisputed that on August 1, 1954, defendant left the bedroom where he and his wife had been sleeping together for some years, and that he did not sleep on the second floor at any time thereafter. It was virtually conceded that the marital relation terminated at that time, although the parties continued to live under the same roof. Defendant had no excuse for his retreat from the bedroom, except his complaint that his wife talked too much and nagged him. Such a complaint did not justify him in terminating the marital relation. This Court has repeatedly stated that the law of Maryland does not countenance the separation of a husband and wife except for grave and weighty causes, and that nagging and even the use of vulgar and abusive language do not amount to such conduct as will justify one spouse in deserting the other. No misconduct of the wife will justify her husband in deserting her unless it becomes impossible for him to continue to live with her without loss of his health or self-respect, or there is reasonable apprehension of bodily injury or suffering. *Schwartz v. Schwartz,* 158 Md. 80, 148 A. 259; *Bradshaw v. Bradshaw,* 189 Md. 322, 55 A. 2d 719; *Gold v. Gold,* 191 Md. 533, 539, 62 A. 2d 540; *Smith v. Smith,* 196 Md. 219, 76 A. 2d 160. Accordingly in this case defendant did not ask for or receive any affirmative relief.

It is likewise clear that complainant is not entitled to a divorce.  She did not claim that she asked for sexual intercourse and that her husband refused her.  She admitted on the stand that she did not know any reason why her husband stopped sleeping with her.  It is evident that she was satisfied with a termination of cohabitation.  Even though living in the same house, they seldom spoke to each other.  Neither party made any earnest effort to preserve the marriage.  It was a clear case of incompatibility.  It is a reasonable inference that complainant was satisfied to have her husband spend the nights on the first floor.  She admitted that she told him that as long as they were not getting along, she wanted him to leave her alone.  Where husband and wife were living under the same roof without marital cohabitation, and no gesture of conciliation or forgiveness was made by either, the only possible inference is that they both preferred to live in sullen hostility.  *Davey v. Davey,* 202 Md. 428, 432, 96 A. 2d 606.  For these reasons we agree with the chancellor that neither party in this case was entitled to a divorce.

However, complainant's bill prayed not only for a divorce and alimony, but also for custody of the minor child and payments for his support and maintenance. The Maryland statute now empowers the court of equity in any case in which the care and custody of the children of the parties forms a part of the relief prayed, whether a divorce is decreed or not, to order and direct who shall have the guardianship and custody of the children *pendente lite* or permanently, and be charged with their support and maintenance, and may at any time thereafter annul, vary or modify such order in relation to the children.  Code 1951, art. 16, sec. 34; *Bennett v. Bennett,* 197 Md. 408, 79 A. 2d 513, 29 A. L. R. 2d 467.

We do not think the bill should have been dismissed. Where a bill for divorce *a mensa et thoro* also prays for custody of a minor child and for its support and maintenance, and the divorce is denied, the bill should not be dismissed but custody should be awarded and jurisdiction

should be retained for the purpose of awarding support and maintenance if the circumstances should warrant such action. *Sause v. Sause,* 192 Md. 88, 63 A. 2d 632.

*Order affirmed in part and reversed in part, and case remanded, the costs to be paid by appellee.*