## HODGES *v.* HODGES

[No. 158, October Term, 1956.]

*Decided May 10, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Eugene M. Childs,* with whom were *Childs & Bald* on the brief, for appellant.

*David E. Betts,* with whom were *Betts, Clogg & Murdock* on the brief, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

Ethel V. Hodges, the plaintiff and cross-defendant below, appeals from a decree of the Circuit Court for Anne Arundel County awarding the appellee, Louis O. Hodges, Jr., an absolute divorce.

The appellant on September 17, 1955, filed a bill for a divorce *a mensa et thoro* on the ground of cruelty and for temporary and permanent alimony, the custody of the minor children of the parties, Louis and Nancy who are age eighteen and eight years respectively, and for funds for their support. The appellee filed an answer and cross-bill. By the latter he sought a divorce *a vinculo matrimonii* on the ground of desertion and the custody of the children. The Chancellor dismissed the appellant's bill and granted the appellee an absolute divorce, but awarded the custody of, and support for, the children to the appellant. From the decree granting the divorce *a vinculo matrimonii* the wife appeals.

The appellant's first contention is that a constructive desertion amounting to abandonment has not been established

since there is no testimony of a refusal to have marital relations and, furthermore, if there is such testimony it is not corroborated. .

The appellee testified that. in August or September, 1953, the appellant moved out of the bedroom which they had been occupying and slept on the sofa in the living room so as to avoid marital relations with him; that thereafter he had no marital relations with her although he had occasionally desired them; that several times he questioned her as to why she stayed in the living room at night and reminded her that "no one ever made you get out of the bedroom upstairs". He admitted that she never locked him out of her bedroom until after the start of the divorce proceedings.

The appellant testified that she moved out of the bedroom in September, 1953, to sleep on the sofa in the living room, because it helped her arthritic back; that they had not engaged in marital relations for a substantial period of time, possibly for one or two years, and that during the time she slept on the sofa neither asked the other to resume marital relations.

Louis O. Hodges, III, the elder child of the parties, stated that his mother slept on the sofa but he had no knowledge of whether or not his parents had marital relations.

William K. Hodges, brother of the appellee, testified that the appellant came to see him in 1954 and consulted him about securing legal counsel for a divorce or separation from the appellee.

Code (1951), Article 16, Section 33, provides that a divorce a vinculo matrimonii may be granted:

> "* * * when the court shall be satisfied by competent testimony that the party complained against has abandoned the party complaining, and that such abandonment has continued uninterruptedly for at least eighteen months, and is deliberate and final, * * *."

It is well recognized that a permanent and irrevocable refusal, without proper cause, of one spouse to · have sexual intercourse with the other constitutes an abandonment under

the above quoted statute. *Fleegle v. Fleegle,* 136 Md. 630, 110 A. 889; *Martin v. Martin,* 141 Md. 182, 118 A. 410; *Klein v. Klein,* 146 Md. 27, 125 A. 728; *Crumlick v. Crumlick,* 164 Md. 381, 165 A. 189; *Lent v. Lent,* 202 Md. 240, 96 A. 2d 14; *Schwartzman v. Schwartzman,* 204 Md. 125, 102 A. 2d 810.

In *Mower v. Mower,* 209 Md. 413, 417, 418, 121 A. 2d 185, this Court said: "* * * It is understood, of course, that the mere fact that a husband ceases to occupy the room in which he and his wife have been accustomed to sleep and thereafter occupies alone another room in the house is not necessarily a withdrawal of marital right from the wife which constitutes desertion within the meaning of the statute. It is only where it is without good reason that the husband leaves his wife and permanently refuses to have intercourse with her that the occupancy of another room constitutes desertion as a ground for divorce. *Ruckle v. Ruckle,* 141 Md. 207, 118 A. 472; *Wysocki v. Wysocki,* 185 Md. 38, 41, 42 A. 2d 909; *Jones v. Jones,* 186 Md. 312, 46 A. 2d 617. Moreover, the law is clear that the complainant who seeks a divorce has the burden of proving the allegation that the defendant refused to fulfill the marital duty."

Code (1951), Article 35, Section 4, provides, among other things, that no decree of divorce shall be granted upon the testimony of the plaintiff alone, "* * * but in all such cases testimony in corroboration of that of the plaintiff shall be necessary."

In the instant case, we find it difficult in the first place to interpret the husband's own testimony as being evidence of a permanent and irrevocable refusal by the appellant to have marital relations; and the wife's testimony is in flat contradiction of such an interpretation. Yet, if, as the Chancellor found, we accept the husband's testimony as showing such a refusal on the wife's part, we are immediately confronted with the problem of corroboration of his testimony.

It has often been stated by this Court that slight corroboration is sufficient if the facts preclude any possibility of collusion. *Kelsey v. Kelsey,* 186 Md. 324, 46 A. 2d 627; *Harp v. Harp,* 198 Md. 485, 84 A. 2d 895; *Lent v. Lent, supra.*

Corroboration cannot, however, be dispensed with. We have clearly in mind the rule that the findings of fact of the trial judge are not to be set aside unless plainly erroneous. In this case the Chancellor was of the opinion that the husband's testimony "appears sufficiently corroborated." His opinion on this point seems to have been founded primarily, if not wholly, upon two things: (1) that the son corroborated the fact that· the wife slept on the sofa in the living room; and (2) that more than six months after she had begun sleeping there, she had talked with the husband's brother about getting in touch with a lawyer with a view towards seeking a divorce or separation.

As to the first of these items, it is to be noted that the son had no knowledge with regard to the discontinuance of marital relations or the willingness or unwillingness of either spouse to resume them. Corroboration must extend to every element necessary to justify the relief sought. *Kelsey v. Kelsey,* 186 Md. 324, 328, 46 A. 2d 627, *supra.* As was said in *Owings v. Owings,* 148 Md. 124, at 127, 128 A. 748, "The admitted fact that they [the spouses] were occupying separate bedrooms does ⸗not substantiate the charge that intercourse was refused. * * * The statement of the appellant to that effect required corroboration." See also *Mower v. Mower, supra,* and· *Wysocki v. Wysocki,* 185 Md. 38, 42 A. 2d 909.

As to the second item, the conversation seems inconclusive. It took place apparently more than six months after the wife had begun to sleep on the sofa or couch in the living room. It also followed by perhaps two months an effort made by the husband's brother (at the suggestion of the husband) to try to improve their domestic situation. At the time of that effort nothing seems to have been said about a divorce. The date of the conversation in the spring of 1954 in which divorce was mentioned does not appear clearly, and there is considerable doubt as to whether it occurred eighteen months before the husband filed his cross-bill. Cf. *Kershaw v. Kershaw,* 195 Md. 307, 73 A. 2d 223. At best, it seems to throw very little light on the wife's willingness or unwillingness to have marital relations with the husband in August or September, 1953.

The evidence seems to show mutual indifference towards marital relations rather than any desire therefor on the part of one and refusal on the part of the other. In this respect the case appears quite different on its facts from *Lent v. Lent, supra,* which was one of the cases cited by the Chancellor in support of his view that there was sufficient corroboration.

In *Kershaw v. Kershaw, supra,* which was the other case cited by the Chancellor on this point, the wife and the husband each sought a divorce from the other on the ground of desertion. The trouble that led to the litigation began with an altercation one day between the husband and his son while they were getting in hay. It continued into the evening when the daughter and son-in-law came over to the farm. What part the wife took in it is not clear, but at the end of the evening the husband asked the wife to fix another room for him as he wished to leave the common bedroom. She could not do this at once, but did so a day or two days later. About four or five weeks later the husband and wife entered into a separation agreement. Although this Court expressed the view that the facts showing desertion by the husband through his refusal to continue marital relations were clearly established and were corroborated, this was a comment not necessary to the decision. This Court reversed a decree in favor of the husband based upon the wife's physical departure from the farm shortly before it was sold pursuant to the separation agreement. The actual holding was "that these parties entered into an agreement to live separately and have lived separately pursuant to such agreement, but since the time at which a divorce could be granted on that basis has not yet arrived, and since neither of the parties makes such a claim, but each relies on the desertion of the other, both bills of complaint must be dismissed." The principal fact corroborative of the husband's desertion seems to have been the agreement of separation, which provided for the sale of the farm and a division of the proceeds and a waiver by the wife of any claim for support against the husband. (Somewhat ironically, this same document, as we have seen, removed desertion as a ground for divorce.) In the present case there was no corroborative agreement or document.

In our estimation neither of the items set forth above as corroborative of the husband's contention, nor both of them together, are sufficient for that purpose. Whether the parties may have settled down to a state of living together in "sullen hostility" (as in *Davey v. Davey*, 202 Md. 428, 96 A. 2d 606), or may have drifted into a separation by mutual consent, either before or after the husband moved out of the house, we think that the husband has failed to adduce evidence sufficient to corroborate his claim that the wife was guilty of constructive desertion when she changed her sleeping place to the couch or sofa in the living room. Under these circumstances that part of the decree which granted the husband a divorce cannot stand. *Tomkey v. Tomkey*, 130 Md. 292, 100 A. 283; *Rodgers v. Rodgers*, 142 Md. 549, 121 A. 249; *Misner v. Misner*, 211 Md. 398, 127 A. 2d 547.

> *Decree reversed, with costs, insofar as it grants a divorce to the husband, and cross-bill of complaint dismissed.*