## BRENNECKE v. BRENNECKE

[No. 221, October Term, 1956.]

(Two Appeals In One Record.)

*Decided June 3, 1957.*

The cause was argued before COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ., and McLAUGHLIN, J., Associate Judge of the Fourth Judicial Circuit, specially assigned.

*J. Purdon Wright* and *William Bruce Oswald,* for appellant.

*Bernard S. Melnicove* and *Joseph S. Kaufman,* with whom were *Needle & Melnicove* on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court No. 2 of Baltimore City, awarding permanent alimony to a wife, in accordance with a prayer of her bill, in the amount of $75.00 a week, awarding her custody of two minor children, with support of $10.00 a week for each child, and awarding to the wife's attorney counsel fees of $600.00 for his services in the lower court and $250.00 for his services in this Court. The Chancellor dismissed the husband's cross-bill. The wife has filed a cross-appeal, on the ground that the fee of $600.00 was inadequate.

The chief contention of the appellant is that the wife did

not make out a case of constructive desertion by the husband, and therefore her bill for permanent alimony should have been dismissed, and the prayer of the cross-bill granted. There seems to be no dispute as to the applicable legal principles, and we see no occasion to restate them. The Chancellor found that the parties had had no sexual relations for at least two years prior to the actual separation, as was admitted by both parties, and that this was the fault of the husband, rather than the wife. We think there was evidence, and corroborating evidence, to support the Chancellor's finding. This is peculiarly a case where the Chancellor's findings of fact should not be disturbed. *Reicher v. Reicher,* 196 Md. 494.

To summarize the voluminous testimony, we think the record establishes that this was a happy marriage from 1943 until after the birth of the second child in 1950, at which time the wife was twenty-seven and the husband thirty-one years of age. At about that time the husband obtained a better job, and became indifferent to his wife and family. She discussed her marital problems with Dr. Russell, who had been her obstetrician. He testified to a marked change in her, in that she was nervous and distraught. She told him that for some time past she had not had any sexual relations with her husband, and complained of his neglect and animosity. He discussed the matter with the husband, who was extremely noncommittal, although he agreed to again share a double bed with the wife. This arrangement was soon discontinued; he occupied a separate bed and told his wife that "sexual life was not the most important thing". That was in 1951, according to her testimony, and they had no sex relations after that time. He admitted there had been no sex relations within the last two years before the separation.

There was also testimony that the husband was harsh and abusive to his wife, and given to tirades and bad language, which was verified by the testimony of a neighbor. The wife's health became seriously impaired, culminating in an incident that occurred on May 6, 1956. After a scene between the parties, the wife went to a movie, but later drove to the Union Memorial Hospital in a hysterical condition, where she was placed under sedation and given a room. When the husband

came to the hospital he declared she did not need medical attention, and demanded that she return home. She told him she did not want to go home, and a few days later went to her parents' home. He father made arrangements with the husband, that he should temporarily move out of the marital domicile, so that she might return and look after the children. He moved into an apartment and has never returned. He did not communicate with her until June 3, and then only in response to a telephone call from her. In July, 1956, he caused an advertisement to be published in the newspapers to the effect that he would not be responsible for her debts. He also refused to meet an obligation incurred by him for the tuition of his children. The wife's bill was filed on August 23, 1956, and his cross-bill, seeking a divorce on grounds of desertion, and for custody of the children, was filed on September 4, 1956. On September 18, 1956, after there had been a hearing as to alimony *pendente lite,* he sent her a formal letter, by registered mail, in which he referred to her arbitrary and unreasonable conduct, and declared: "I am coming home to my own house, bed and board." This can hardly be considered as a sincere effort at reconciliation, and we attach no great weight to the fact that the wife declined to admit him. On the facts the case seems to fall in the pattern of *Lent v. Lent,* 202 Md. 240, and *Scheinin v. Scheinin,* 200 Md. 282, as the Chancellor noted.

The husband does not now question the award of the custody of the children to the wife, or the allowance for their support. He contends that the allowance of $75.00 per week for permanent alimony is excessive. The husband is a certified public accountant, employed by the Western Maryland Dairy. He has a basic salary of $10,000.00 a year, and received a bonus of over $2,000.00 for the calendar year, 1955, paid in 1956. In addition he receives other benefits, such as a membership in a country club, and an expense account, paid by his employer. He also had dividend income of $522.00 for the year, 1955. It is probable that his income will increase, since he has recently been appointed Comptroller of the Chestnut Farms Dairy in Washington, D. C., while retaining his employment in Baltimore. We see no reason to question the

allowance granted under the circumstances. The appellant complains that the Chancellor first allowed only $65.00 per week, but coupled this with an order that the husband pay $10.00 a week for taxes, interest and insurance on the house which she occupied, title to which is in their joint names. However, the Chancellor modified this, when his attention was called to *Dougherty v. Dougherty,* 187 Md. 21. In fixing the award at $75.00, the Chancellor stated that he had considered the provision for living quarters in fixing the award, and the amount would be the same, except that "there will be no obligation for the husband to pay taxes or upkeep on the house." This is, obviously, a reference to the carrying charges, which must be borne by the wife, as we interpret the decree, and will in part enure to the husband's benefit, to the extent that it increases or protects his joint interest.

As to the opposing contentions in regard to the $600.00 counsel fee, it is sufficient to say that we are not disposed to hold that the Chancellor abused his discretion. The appellant seems to have abandoned his objection to the allowance of the counsel fee for services in this Court.

*Decree affirmed, costs to be paid by the appellant. Cross-appeal dismissed.*