KERBER *v.* KERBER

[No. 458, September Term, 1964.]

*Decided November 9, 1965.*

The cause was argued before PRESCOTT, C. J., and HORNEY, MARBURY, OPPENHEIMER and BARNES, JJ.

*Eloise M. Kerber, pro se,* with whom was *Elizabeth H. Allen* on the brief, for the appellant.

*Thomas B. Yewell* for the appellee.

HORNEY, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Prince George's County granting a divorce *a vinculo matrimonii* to the appellee-husband and dismissing the cross-bill of the appellant-wife for a divorce *a mensa et thoro.*

In July of 1964, the husband (William D. Kerber) filed suit for an absolute divorce on the ground of constructive desertion based on the refusal of the wife to resume sexual relations with him after he attempted to effect a reconciliation in December of 1962. The wife (Eloise M. Kerber) countered by filing a cross-bill in September of 1964 for a partial divorce on the same ground based on the refusal of the husband to resume the marital relationship following an offer of reconciliation made by her in May of 1964.

The appeal presents two possible questions. The first is whether the husband, in view of the corroboration requirements of Maryland Rule S75, should have been granted a decree of divorce. The second (in case the answer to the first is in the

negative) is whether a decree of partial divorce should have been granted to the wife under the circumstances of this case.

The parties, who have two sons, began to experience serious marital problems about nine years after their marriage. They ceased having sexual intercourse in 1955 and stopped occupying the same bedroom in 1956 because, according to the husband, the wife kept him awake by rubbing cold cream into her hands and face, persisted in so covering the bed as to make it too warm for him and poked him in the ribs if he rolled against her while in bed. During the years that they continued to sleep apart, the marriage was characterized by bickerings and petty arguments and desultory conferences with marriage counselors. Finally, in December of 1962, at a time when both parties were consulting a family service agency, the husband, acting upon the advice of their counselor, moved back into the bedroom. The husband testified that when this move was made the wife threw a "tantrum" and refused either to sleep with him or to resume marital relations. He further stated that they had not lived together as man and wife since that time. The wife testified that she thought the action of her husband in moving back into their bedroom was the result of intoxication because he had been drinking and did not remove any of his clothes before getting in bed. She further stated that as a result of his apparent intoxication, and because she believed he was not sincere, she refused to sleep with him.

The difficulties between the parties apparently continued without abatement both in and out of court, for in May of 1964, a bill of complaint which the wife had filed against the husband for a divorce was dismissed by the chancellor, who according to the wife, suggested that they make a bona fide effort for a reconciliation and a resumption of marital relations. The wife testified that immediately after the dismissal of that action she told her husband that he could move back into their bedroom, that she was ready to resume sexual relations with him and that she was "very sincere about it." Although the husband admitted that his wife had made such an offer, he claimed she had no intention of effecting a reconciliation.

Besides the parties, the only other witness was their oldest son. He was called by his father and testified that his parents

had occupied separate bedrooms for as long as he could remember. The son further testified that in May of 1964 he overheard his mother ask his father to return to the bedroom. Later he said that he interpreted this as a request by his mother that they should resume marital relations. The witness then stated that the parties did not go back together at that time or since then.

(i)

The unjustifiable refusal of either the husband or the wife to have sexual intercourse with the other spouse constitutes matrimonial desertion. And when such abnormal conduct has continued uninterruptedly for the statutory period of time, and is deliberate and final, and the separation of the parties is beyond any reasonable expectation of reconciliation, the court may decree a divorce *a vinculo matrimonii. Hodges v. Hodges,* 213 Md. 322, 131 A. 2d 703 (1957); *Burke v. Burke,* 204 Md. 637, 106 A. 2d 59 (1954); *Kelsey v. Kelsey,* 186 Md. 324, 46 A. 2d 627 (1946). It is clear, however, that the complaining spouse has the burden of proving that the other spouse refused to fulfill the marital obligation. *Mower v. Mower,* 209 Md. 413, 121 A. 2d 185 (1956); *Lent v. Lent,* 202 Md. 240, 96 A. 2d 14 (1953); *Jones v. Jones,* 186 Md. 312, 46 A. 2d 617 (1946). Furthermore, where, as here, the evidence favorable to the plaintiff-husband, other than the admissions of the defendant-wife which are not to be taken as conclusive, consisted only of his testimony, Rule S75 required corroboration by the testimony of a person who was not a party to the divorce action. *Taylor v. Taylor,* 238 Md. 312, 208 A. 2d 685 (1965); *Comulada v. Comulada,* 234 Md. 287, 199 A. 2d 197 (1964). This was not done.

While the testimony of the son corroborated the testimony of his parents that they had occupied separate bedrooms for a long period of time, there was no confirmation of the charge (which was the basis of the action) that there has been a refusal of sexual intercourse. The mere occupancy of separate bedrooms in and of itself does not prove a withdrawal of the marital right for the reason that the right may be, and often is, continued and exercised under changed conditions with the approval of both parties. The son did indicate that his parents

had not resumed marital relations in May of 1964, but that at most was no more than substantiation of the fact that the parties had ceased having sexual relations at some time prior to May of 1964: it did not corroborate the fact of nonintercourse between the parties for the statutory period of eighteen months or more prior to the bringing of the divorce action. While only slight corroboration is necessary in contested cases, the invariable rule is that every element to justify the relief sought must be corroborated. *Taylor v. Taylor, Hodges v. Hodges* and *Kelsey v. Kelsey,* all *supra.* It follows, since there was insufficient corroboration of the fact that the wife refused to have intercourse, that the chancellor was in error when he granted the husband a divorce *a vinculo matrimonii.*

## (ii)

Having decided that the husband was not entitled to a decree of divorce, the next question is whether a divorce *a mensa et thoro* should have been granted to the wife on the ground of constructive desertion based on the rejection by the husband of the alleged effort by the wife to bring about a reconciliation following the dismissal of the first divorce action in May of 1964. If it was really the intention of the wife to resume the marital relationship, and the offer of reconciliation was made in good faith, without improper qualifications and conditions, then the refusal of the husband without justification to renew the suspended marital relationship would constitute desertion. *Zulauf v. Zulauf,* 218 Md. 99, 145 A. 2d 414 (1958) ; *Weintraub v. Weintraub,* 214 Md. 38, 132 A. 2d 847 (1957). The record, however, discloses that that was not the situation here for, other than making a verbal declaration of her sincerity, the wife failed to demonstrate by her actions and conduct a real intention to resume the marital relationship. The chancellor, who saw and heard the witnesses, having concluded that the efforts of the wife to become reconciled with her husband lacked sincerity, found as a fact "that the attempt at reconciliation was not made in good faith."

Since we must, under Rule 886 a, give due regard to the opportunity of the chancellor to judge the credibility of the witnesses, we are unable to say that he was clearly wrong when

he dismissed the cross-bill of the wife. The decree as to the cross-bill for a divorce *a mensa et thoro* must therefore be affirmed.

> *That part of the decree granting an absolute divorce to the appellee is reversed; that part of the decree denying the appellant a partial divorce is affirmed; the costs to be paid by the appellee.*