## WAGSHAL *v.* WAGSHAL

[No. 54, September Term, 1967.]

*Decided March 5, 1968.*

*Motion for rehearing filed March 26, 1968; denied April 1, 1968.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, BARNES, McWILLIAMS and SINGLEY, JJ.

*James J. Cromwell* for the appellant.

*Melvin M. Feldman* for the appellee.

BARNES, J., delivered the opinion of the Court.

This appeal principally involves a challenge by Jerome S. Wagshal, the plaintiff in the Circuit Court for Montgomery County and appellant in this Court (hereinafter referred to as "the husband"), of the propriety of portions of a decree signed on January 26, 1967, by the Chancellor (Pugh, J.) requiring the husband to pay $129.23 twice a month to his wife, Darlein Wagshal (wife), defendant below and appellee in this Court, for the support of Marla Frances Wagshal (child or Marla), the minor child of the parties, then 10 years of age, and allowing a $250.00 fee to the wife's counsel for services rendered the child in the case. The husband also objects to the action of the Chancellor in removing from the proposed form of decree submitted to the Chancellor by the wife's solicitor a provision agreed upon by the respective parties that the child "shall be raised as a Jewish child." There is no challenge to the provisions of the decree awarding the child's custody to the wife, subject to the further order of the court, and the provisions of the decree in regard to the husband's visitation rights, which were substantially the same as those agreed upon by the parties.

The basic facts in this case are for the most part undisputed. The husband and wife were married on July 26, 1953, in the District of Columbia. Marla is the only child of this marriage and was born on July 14, 1956. The husband and wife separated in October, 1964. Marla has resided with the wife since that time. Marla attends the public school and has always done this. She is not enrolled in any special courses requiring any unusual expense. She requires no special food and is a normal, healthy child who requires no special training devices. She has had, speaking generally, no unusual medical expenses. After the separation of her parents, Marla was given treatment by a

child psychiatrist, but this treatment has ceased. Since the separation of her parents, Marla has been living with the wife and the wife's mother, the three of them sharing a two bedroom apartment. Marla and her grandmother share the smaller of the two bedrooms in the apartment, the wife occupying the large bedroom alone. The apartment rent is $164.50 a month and is paid by the grandmother.

The wife is a self-supporting professional artist. The record is not clear in regard to her earnings generally, but she testified that not long before the hearing she had been paid $90 a week as an illustrator by one of the department stores in the District of Columbia.

The husband is employed by the United States Government as an attorney in the Anti-Trust Division of the Department of Justice. The Chancellor found that his net annual income was $11,856 from the government, that he received $300 from outside sources, and that he received a refund from his federal tax of $250, so that his net annual income was $12,406. The husband sought unsuccessfully to prove in the trial court, but tendered the proof, that his net taxable income in 1966 was $7,317.10, and further that his federal income tax in 1965 was $1,856, indicating a taxable income of $8,805.85. For the purposes of this appeal the Court will assume, without deciding, that the husband's net annual income was $12,406 as found by the Chancellor. The testimony indicated that the husband has no estate and that his debts exceeded his assets. At the time of trial his debts amounted to $6,775.[1] In addition to his personal effects, he has a stamp collection valued at approximately $1,500.

On June 21, 1965, the Chancellor (Shure, J.) signed an order awarding the wife $80 a week for support of the child, *pendente lite*. The husband, on November 15, 1966, filed a motion for an order reducing this *pendente lite* award, alleging that he had taken the wife's deposition and her testimony at the deposition indicated that nothing approaching $80 a week

---

1. Of this amount, $1,000 is owed to the Navy Mutual Aid Association, $3,000 to the Riggs National Bank and $2,775 to the husband's mother.

had been spent by the wife on the child, but rather expenditures for the child's support averaged less than $25 weekly. The husband supported the motion by his affidavit indicating that the costs for the maintenance of the child amounted to about $20 a week, consisting of approximately $10 for food, $1.50 for clothing, $2 for recreation, $1.50 for transportation and telephone and $5 for miscellaneous expenses. This motion and all other pending motions were denied by the Chancellor (Pugh, J.) on December 27, 1966, and the trial was set for January 29, 1967.

The husband had deposited the $80 a week *pendente lite* award in the wife's bank account, so that she would have to expend it by check. This she did, but the wife at the deposition hearing was unable to produce many of the withdrawal checks or to explain satisfactorily what disposition she had made of the funds she had withdrawn from her account allegedly for Marla's support and maintenance.

The husband testified that under the *pendente lite* order for $80 a week he had paid the wife in one year $4,160, and of that amount, only $980 could be accounted for as expenditures for the child. He submitted a tabulation (admitted as defendant's exhibit No. 5) giving the details of the estimated expenditures of $980 for the year for the child by the wife, an average expenditure of $19 a week. This same tabulation and the husband's testimony showed the husband's estimate, with specific subdivisions such as food, clothing, etc., on what he thought should be spent on the child for one year, not including rent paid by the wife's mother. This amounted to $1,155 a year, or an average of $22.20 a week. The husband estimated that for all purposes the amount required for the child's maintenance was between $25 and $30 a week.

The wife's estimate of the amount needed by the child is rather extraordinary. She testified that her estimate of the amount needed was $136.89 a week, which would amount to $7,118.28 annually. She estimated $15.65 for recreation, which included summer camp, ballet, parties and presents, vacation and amusement. These items alone would amount to $813.80 annually. Medical and dental expenses were estimated at $31.20 a week, or $1,622.40 annually, notwithstanding that the wife

testified that Marla is a generally healthy child, although she had required some psychiatric treatment for which her husband had made payments over and above the $80 a week he paid under the *pendente lite* order. The estimate for rent was $20 a week, or $1,040 a year, although the wife admitted that the rent for the apartment where she, her child and her mother lived was $164.50 a month, or $1,974 a year. The wife gave no details or breakdown in regard to how she arrived at most of the items on her estimate.

The Chancellor indicated in his oral opinion that it was "difficult to figure exactly how much money is spent for a ten year old child who is living in an apartment with two adults." He made no calculation based on the specific needs of the child or what had reasonably been spent on the child in the past, but, on the contrary, took a fixed percentage of 25% of the husband's net income as the basis of the allowance for the child's support. After indicating that the bare necessities for the child "might be almost less than a hundred dollars a month, but that the husband and wife were professional people," the Chancellor stated:

> "The Court is of the opinion that an allowance of 25 percent of his net income per month would be fair and reasonable under all the circumstances. That figure according to the Court's arithmetic amounts to $3,101.50 a year. That is 25 percent of $12,406.00. On a monthly basis you divide that by 12; that you give the wife $258.46 a month and on a bi-monthly basis the sum of $129.23."

In the final decree the amount of $129.23 was required to be paid to the wife by the husband bi-monthly for the child's support, the payments to be made on the first and fifteenth of each month commencing on February 1, 1967. On an annual basis this award would amount to $3,101.52; on a weekly basis it would amount to $59.64, or approximately $60 a week.

We are of the opinion that the award was excessive. The principal considerations in making an award for the support of a child are the need of the child and the financial circumstances of the father of the child. The child's station in life is to be con-

sidered in connection with the needs of the particular child. The award of approximately $60 a week for the maintenance of the child in the present case is far beyond any needs shown by the record. The Chancellor indicated that the bare necessities for the child would amount to less than $100 a month. The use of a percentage of the husband's net income is not, in our opinion, a proper method to use in reaching a proper conclusion in regard to a child's needs. The wife's estimate of the child's "needs" in this case is quite unrelated to reality. Not only were many of the individual items of the estimate not given, but the final result of the estimated "needs" amounted to $7,118.28 a year as contrasted with the husband's annual net income as found by the Chancellor of $12,406.

Although each case involving awards for the support of children rests upon its own facts, our recent decision in *Kapneck v. Kapneck,* 235 Md. 366, 201 A. 2d 798 (1964), indicates that the Chancellor's award in the present case is excessive. In *Kapneck* the husband had a net income of $12,000 a year (comparable to that of the husband in the present case), and in addition (and unlike the husband's situation in the case at bar) had a net worth of approximately $62,000. The Chancellor in *Kapneck* awarded the wife $500 a month for each of two children, aged six and seven. We reduced the Chancellor's award in that case to $100 for each child. This amounts to $23.08 a week. See also *Provenza v. Provenza,* 226 Md. 63, 172 A. 2d 503 (1961); *Brennecke v. Brennecke,* 213 Md. 447, 132 A. 2d 106 (1957); *Tumminello v. Tumminello,* 205 Md. 609, 109 A. 2d 776 (1954); and *Barnard v. Godfrey,* 157 Md. 264, 145 A. 614 (1929).

In the present case we are of the opinion that the record indicates a maximum award of $30 a week (or of $65 twice a month) for the support of the child, and we accordingly reduce the award from $129.23 twice a month to $65 twice a month, payable on the first and fifteenth days of each month directly to the wife, and not by deposit in her bank account.

The award to counsel of $250 is, in our opinion, also excessive and we reduce that allowance to $100.

The Chancellor was also, in our opinion, in error in striking from the proposed decree the requirement that the child be

raised as a Jewish child. The inclusion of this provision was agreed upon by the parties in their stipulation and this type of agreement in regard to the religious upbringing of a child is a desirable one which should be encouraged. Marla is being raised as a Jewish child and it is proper that this provision be incorporated in the decree so that this policy, agreed upon by the parents, cannot be changed without a future modification of the decree.

Although the wife had great difficulty in identifying the specific items spent for the child's support from the $80 a week paid by the husband under the *pendente lite* order, we are of the opinion that in view of all the facts and circumstances disclosed in the record we will not remand the case for a further accounting by the wife.

The decree of January 26, 1967, will therefore be modified so that (1) the defendant husband will be required to pay the plaintiff wife, directly and not by way of deposit in the wife's bank account, the sum of $65 twice a month for the support of the minor child, payable on the first and fifteenth days of each month, the first payment under this modification of the Chancellor's decree to be made on April 15, 1968, (2) the counsel fee of $250 will be reduced to $100, and (3) the decree will include the provision "that the aforesaid minor child shall be raised as a Jewish child."

> *Decree modified as set forth in this opinion, and, as modified, affirmed, the costs to be paid by the appellant.*