## WILLIAM P. ROEDER *v.* CLARA ROEDER
[Nos. 38, 39, April Term, 1936.]

*Decided June 10th, 1936.*

The causes were argued before BOND, C. J., URNER, OFFUTT, PARKE, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Clarence Lippel*, with whom was *Matthew J. Mullaney* on the brief, for the appellant.

*Albert A. Doub* and *Albert A. Doub, Jr.*, submitting on brief, for the appellee.

SHEHAN, J., delivered the opinion of the Court.

There are two appeals in this record. Each of them is from a decree of the Circuit Court for Allegany County and relates to allowances of permanent alimony or separate maintenance to Clara Roeder, the appellee. Under the first decree, dated the 15th day of February, 1936, the chancellor allowed $100 per month. This was modified by a decree of March 14th, 1936, wherein the appellant, William P. Roeder, was ordered to pay to the appellee $70 per month. From both of these decrees appeals were taken and are before us for consideration.

Clara Roeder, on the 5th day of June, 1935, filed a bill of complaint against her husband, William P. Roeder, in which she alleges that the plaintiff and defendant were married on the 30th day of June, 1930, and lived together in Cumberland, Maryland, from that time until June 1st, 1935; that on this date the appellant, without making any provision for the support of the appellee, abandoned and deserted her, and at that time she did not know where he was. She further alleged that her husband was a man

of considerable means and recounted the kind of property he owned, and that he had a substantial income, and that she was entirely without means of support. In the bill she prayed for alimony out of her husband's estate, that a receiver be appointed, and for general relief.

The chancellor passed an order allowing the sum of $100 per month as alimony *pendente lite* and appointing Albert A. Doub, Jr., receiver of the estate of the said William P. Roeder, with the usual power and authority, and providing for a bond of $6,000. The order for the appointment of a receiver was subsequently revoked. A combination demurrer and answer was filed to the bill of complaint. The essential averments of the bill were denied, the demurrer was overruled, and testimony was taken. The bill did not contain a prayer for a divorce, and the only question before the chancellor, and before this court, is the correctness of the allowance of permanent alimony or separate maintenance, and the amount thereof.

The testimony shows that the appellant had previously been married, that he had two sons by a first wife, and was paying to his first wife alimony of $50 per month. In this case the allegations of the bill, in order to support a demand for alimony or separate maintenance, there being no prayer for divorce, must be such as would entitle the plaintiff to a divorce *a mensa et thoro*, if such relief had been prayed, and these allegations must be supported by a clear preponderance of evidence. *Miller v. Miller*, 159 Md. 204, 150 A. 451; *Lynch v. Lynch*, 166 Md. 300, 170 A. 764; *Hood v. Hood*, 138 Md. 355, 360, 113 A. 895; *Polley v. Polley*, 128 Md. 60, 63, 97 A. 526; *Outlaw v. Outlaw*, 118 Md. 498, 502, 84 A. 383.

This being the rule, it is our duty to consider the facts and to determine whether they are sufficient to establish the right of the appellee to a divorce *a mensa et thoro*. The facts in the case that are conclusively established by the testimony and stand without important contradictions, and which relate to the alleged desertion, may be summarized as follows:

William P. Roeder, as early as the summer of 1933, had lost interest in his home, and no longer wished to live with his wife, as disclosed by his letter to Miss Anna May Perrin, his secretary, of April 25th, 1934. In that letter he professed love for her, and stated that nothing but death would keep him from carrying out plans that were agreed upon between them the previous summer. The letter is of some length and is filled with terms of endearment, and stated, "awaiting the day when I can have you all my own."

In a statement of instructions with respect to his business, and the reasons which were actuating him in leaving, he states: "I have decided to leave for another part of the country and attempt a come-back." He further stated that his second attempt at matrimony was on the rocks. The departure of the appellant from Cumberland was evidently a matter that had been well studied. For a considerable period of time prior to his leaving he had been making plans in secret. These plans were quite elaborate. They consisted of the purchasing of a new automobile and secreting it in the town of Ridgely, West Virginia. He denied the purchase of the car to his wife, but finally admitted it when confronted with a statement from the person from whom the automobile was purchased. His clothes were packed in boxes, transported to Ridgely, and were packed in this car. He gave a power of attorney to one of his sons with relation to his business, and some time previously he contracted with Charles Edward Meister to become connected with his business, especially in regard to the sales department. He prepared to take with him practically all his clothes and personal belongings. When these and other preparations had been perfected he left Cumberland the night of the 1st of June, at about 9:30 o'clock. He did not bid his wife goodbye or tell her anything about where he was going. On the contrary, he did tell her he was going to a lodge, and in his testimony he does not deny this deception, and it must be accepted as true. He contended that he was merely leaving his home for the purpose of visiting his son in

California. There is no corroboration of this, and, on the contrary, all the facts, either admitted or not denied, tend to prove the contrary.

Mr. Meister was engaged by Mr. Roeder several months before he entered the employ of one of the appellant's companies, and there was an agreement that he would assume his duties on short notice, and he did so. According to the evidence, no one knew of Mr. Roeder's intentions except his son, his attorney, and Mr. Meister. A power of attorney was executed to the son with relation to the business, a memorandum of instructions was given, he drew from the banks substantially all of his money, and, thus equipped, he secretly took his departure, unknown to his wife. He never communicated with her while he was away, and has not spoken to her since his return, nor sought to re-establish his family relations. Mr. Roeder's attempted explanation of his reason for writing the two letters, the one of April 25th, 1934, and the other on the 3rd day of April, 1936, is harmful rather than helpful to him. The letters were written to Miss Perrin. In the latter he thus counselled her: "My message to you is to be courageous. No harm will befall you." He admitted writing this letter and stated that it was "just a motto copied off a picture that came through the mail," and it was just a fancy. Such explanation can be of little consequence, and needs no comment.

The letter of April 25th, 1934, was not mailed, but was discovered in one of the files of the appellant. He stated that the letter was sealed but the envelope was not addressed; that he supposed it meant what it said, but that he was not in love with Miss Perrin, but he was asked: "Why then did you say so in that letter? A. Well, I have that privilege. Q. You say you have the privilege, a married man, of saying you love her. How would that help you? A. Why, it didn't help me at all. Q. Why did you write it? A. Well, because of a passing whim."

The other answers, which need not here be recounted, are just as inconclusive and unsatisfactory as the above. He made the further statement that he wrote the letter

and put it in a place where he thought his wife would get it, merely to bluff her. In view of the testimony, we cannot give credence to this. His entire testimony on this subject is evasive, lacking in frankness, and is not to be taken seriously. The testimony, from every standpoint from which it may be viewed, is conclusive that the appellant was leaving, not for the purpose of merely making a visit, but, as he stated, to take "at least $10,000 to start with all over again, and to await the day when I can have you all my own." This referred to Miss Perrin.

The charge that the appellee had been guilty of constructive abandonment by discontinuing marital relations with him, in view of his conduct as detailed in the above letters and in the testimony with regard to his actions at his office at the time his wife came upon him, is not convincing and cannot be given serious consideration. If his wife was jealous, she evidently had reasons for being so.

The appellant's argument at bar and the appellant's brief were largely based upon an alleged lack of corroboration, and, while this was urged upon the court, we feel that there was a lack of understanding as to just what is meant in law by corroboration. The Act of Assembly, Code, art. 35, sec. 4, was intended principally to prevent collusion, but this court has stated, where there is no appearance of collusion, little corroborative evidence is required to satisfy the statute. The evidence in this case shows that there was no appearance whatsoever of collusion. On the contrary, it details a relentless struggle between the parties in attempting to sustain their alleged rights and respective positions. There is no statement of the appellee that has not general or specific corroboration, and the allegations of the bill as to desertion, outside of the testimony of the appellee, are substantially proven.

The requirement of corroboration in suits for divorce is provided in article 35, section 4, of the Code, and this is elaborated and discussed at length in the case of *Bowersox v. Bowersox*, 157 Md. 476, 478, 146 A. 266. See, also, *Dicus v. Dicus*, 131 Md. 87, 88, 101 A. 697; *Owings v. Owings*, 148 Md. 124, 137, 128 A. 748; *Marshall v. Mar-*

*shall,* 122 Md. 694, 91 A. 1067; *Oertel v. Oertel,* 145 Md.. 177, 125 A. 545; *Engelberth v. Engelberth,* 159 Md. 700, 150 A. 271; *Appel v. Appel,* 162 Md. 5, 158 A. 65; *Outlaw v. Outlaw,* 118 Md. 498, 503, 84 A. 383. In *Silverberg v. Silverberg,* 148 Md. 682, 130 A. 325, 328, the principal object of the bill was to secure an award of permanent alimony, as does the bill in the instant case. The court in that case stated that: "In the determination of the issues of fact, the wife must bear not only the usual burden of proof which rests upon the proponent of a fact, but also the obligation imposed by the statute that her own testimony will not be sufficient, without corroboration." Thus it will be seen that, where permanent alimony is sought, the same requirements as to proof, including corroboration, are necessary as where divorce *a mensa et thoro* or *a vinculo* is sought.

We can arrive at but one conclusion in this case. The evidence is clear and convincing that the appellant abandoned and deserted his wife, and at this time is living apart from her. The reasons for his actions are clear. They have been heretofore mentioned and need not be again referred to in detail. The amount of alimony or separate maintenance was in the sound discretion of the chancellor, and, there being no evidence that the discretion has been abused, and the allowance so made being reasonable, it must stand. *Wygodsky v. Wygodsky,* 134 Md. 344, 106 A. 698; *Westphal v. Westphal,* 132 Md. 330, 334, 103 A. 846.

If the allowance is excessive, another application may be made to the chancellor for a reduction of it, and under all the circumstances doubtless it would be allowed, if the facts so warranted. It is very true that the income here, as shown in the testimony, is not very considerable, and the fact that he is already paying $50 per month under a previous decree, and that he has a diminishing income by loss of his contract with the municipality of Cumberland, are matters which the chancellor did, and doubtless would, take into consideration in connection with other facts, if the matter is again properly brought before him.

*Dickey v. Dickey,* 154 Md. 675, 678, 141 A. 387; *Slacum v. Slacum,* 158 Md. 107, 111, 148 A. 226.

The demurrer to the bill of complaint was properly overruled, and this action of the chancellor was not questioned in the argument or in the brief.

From what we have said, the decree in both cases will be affirmed.

> *Decree in No. 38 affirmed, with costs to appellee.*

> *Decree in No. 39 affirmed, with costs to the appellee.*