## MARANTO *v.* MARANTO

[No. 72, October Term, 1948.]

216

*Decided February 9, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*James A. Redmond, Jr.,* with who was *James E. Tippett* on the brief, for the appellant.

*John W. Hessian, Jr.,* and *H. Richard Smalkin,* with whom was *Albert Meid, Jr.,* on the brief, for the appellee.

MARKELL, J., delivered the opinion of the Court.

This is an appeal by the husband from a decree granting the wife a divorce *a vinculo* and awarding her custody of their nine-year-old daughter and allowances for the support of herself and the child. In this court no ques-

tion is raised as to custody of the child or the amount of the allowances. The only question is whether there is sufficient corroboration of the wife's testimony to support the decree of divorce.

The principal object of the statutory requirement of corroboration, Code, Art. 35, sec. 4, is to prevent collusion, and when the possibility of collusion is precluded, the corroboration need be but slight. "The corroboration required varies with the circumstances of particular cases, and as the danger of collusion * * * increases or diminishes, in the same ratio the rule prescribed by the statute is applied with greater or less strictness * * *, but under no circumstances may it be dispensed with altogether." *Jacobs v. Jacobs,* 170 Md. 405, 409, 185 A. 109, 111. It is applied most strictly in uncontested cases. *Bowersox v. Bowersox,* 157 Md. 476, 146 A. 266, 65 A. L. R. 165; *Jones v. Jones,* 186 Md. 312, 313, 46 A. 2d 617. In genuinely contested cases the corroboration required may be slight and may be found in evidence of admissions by the other spouse. *Schriver v. Schriver,* 185 Md. 227, 241, 242, 44 A. 2d 479. Apart from statute, to sustain the burden of proof, testimony of one spouse, flatly contradicted by the other, needs corroboration, but the inherent strength or weakness of opposing testimony may furnish corroboration.

In the instant case defendant urges that strict corroboration should be required because a psychiatrist testifies that plaintiff is a paranoiac and it is usual for a paranoiac to exaggerate. The psychiatrist says that in 1945 at defendant's request he examined plaintiff by interviewing her. He "concluded that she was a mild paranoiac, suffiering from delusions probably directed against her husband." "I cannot recall any details, I haven't any note, nothing to refresh my memory to what her direct answers were. She apparently thought that he was doing harmful things and exaggerated either the truth or the importance of them". He cannot remember what the delusions were about, "in other words, it is more of a general impression I have." He cannot recall that he

noticed any sex delusions. "In my mind it was general ill treatment, but specifically I would not swear to it". From her testimony that he heard he believes "she is still a paranoiac. I think she has exaggerated to a great extent. I believe if you go over the testimony you will find many contradictions as to time. He does not know anything about contradictions as to fact; "I am talking about contradictions as to time". "She mentioned a number of times that certain events occurred, and then her own testimony and the testimony of others rather contradicts that." He thinks defendant "is possibly mildly paranoiac, also, to a less degree than" plaintiff. He cannot recall that he did or did not suggest to plaintiff, after he made the examination, that she should leave her husband. The treatment of plaintiff by defendant, as described in her testimony, would certainly increase her condition.

This court has long held that an expert witness cannot usurp the function of the courts to determine the legal sufficiency of evidence of mental incapacity. *Berry v. Safe Deposit & Trust Co.*, 96 Md. 45, 53 A. 720. If a psychiatrist is to take over the function of courts and juries to pass upon the credibility of witnesses, he must furnish some basis for so doing more substantial than a general impression from forgotten facts. In the instant case a psychiatrist is not needed to determine that plaintiff and defendant both have exaggerated and testimony of at least one of them is untrue.

Plaintiff and defendant were married in 1937. They have a child, nine years old when the bill was filed in February, 1948. Another child, born in 1940, died three months after birth. Plaintiff and defendant and the child were still living under the same roof (in a house owned by the entireties) at the time of the trial. In August, 1946 plaintiff ceased, and has not resumed marital relations with defendant. In 1945 she had ceased such relations, but after a conference between plaintiff and defendant and their respective counsel a "reconciliation" had been effected and relations had been resumed.

The bill alleges that defendant, with the intention of breaking their marital relations, for a long time prior to August 3, 1946 so conducted himself towards plaintiff that she, through fear of bodily harm and physical violence on defendant's part, "was forced to leave" defendant "against her own will and for her own protection" on August 3, 1946; that, among other things, defendant's conduct toward plaintiff consisted of "threatening and abusive language, threats of physical violence, and actual physical violence to such an extent as to cause" plaintiff "to be fearful of her mental and physical well-being and * * * apprehensive of her own safety". Plaintiff avers that defendant's conduct constitutes abandonment and desertion of her by him, which has continued uninterruptedly for more than eighteen months and is deliberate and final, and the separation is without reasonable expectation of reconciliation. Defendant in his answer denies these allegations and avers that without just cause plaintiff has refused to cohabit with him. The bill also alleges that defendant has recently threatened to take plaintiff's life and to destroy by fire the home and the furnishings therein and as a result of these threats it is impossible for plaintiff to live in peace of mind. Defendant in his answer admits that "he may have made the statements" referred to, during an argument provoked by plaintiff's threatening to take the child from his custody, but says these statements "were made without intent or threat, and so understood by" plaintiff. Plaintiff testifies that defendant tries to drag her around the house, "sometimes he continues for four or five hours"; "there have been simply hundreds of" acts of violence "throughout the years"; on September 21, 1947 he tried to strangle her and only loosened his grip on her neck when the little girl kept kicking him. Defendant denies these charges, though after saying he "did not strangle her," he says in the same breath "it was before that [September 21, 1947]". Defendant says that on one occasion, and plaintiff admits that in self-defense, she used a broom on him effectively. The fact that she continued to live under

the same roof with him does not indicate that she regarded such acts of violence as creating "danger to life, limb, or health". *Collins v. Collins,* 184 Md. 655, 662, 42 A. 2d 680, 683; *Schriver v. Schriver,* 185 Md. 227, 231, 44 A. 2d 479. At any rate plaintiff's testimony as to these alleged acts of violence is wholly uncorroborated. We are, therefore, unable to concur in the view of the lower court in finding that such acts of violence were sufficiently proved and constituted constructive desertion and granting a divorce on this ground.

Besides testifying to alleged acts of violence charged in the bill, plaintiff testified that she terminated marital relations with defendant in August, 1946, and had suspended relations in 1945, because of perverted practices by defendant, begun with her consent soon after their marriage but continued throughout the nine years of their marital life without her consent and against her protests, in spite of repeated promises by him to desist, especially after the "reconciliation" in 1945. Defendant testified that these practices consisted of a single act or "attempt" by him soon after their marriage, never repeated. The lower court found it unnecessary to consider this testimony, remarking, "The testimony along these lines is rather strong, but is categorically denied by Mr. Maranto. It is just as well that matter be ignored by the court in making its final decision in this case, for the sake of all concerned." As we are unable to concur in the lower court's grounds for its decision, we cannot ignore this testimony. Defendant's testimony, the uncontradicted testimony of plaintiff's brother-in-law and the testimony of plaintiff's sister indicate that sex is an obsession with defendant, regardless of time, place, or circumstance, at home or in company, or on the witness stand, in conversation and behavior, not only to an abnormal degree but in abnormal ways. The sister testified to a remark by defendant (only partly and unconvincingly denied by him) which is an admission of plaintiff's charge. Defendant admits that at the conference of parties and lawyers in 1945 perverted practices were dis-

cussed. The stormy married life of two paranoiacs for nine years could hardly have been caused by a single act, committed by consent at the beginning of the marriage and never repeated. Such an act could not have been a subject of "reconciliation" after eight years. We think plaintiff's testimony is sufficiently corroborated by her sister and brother-in-law. Manifestly this conduct of defendant not only imperiled plaintiff's health, mental if not physical, but aside from health, made life unbearable. It justified plaintiff in terminating marital relations and constitutes constructive desertion on defendant's part. *Collins v. Collins, supra.*

*Decree affirmed, with costs.*