## EVAN *v.* EVAN

[No. 209, October Term, 1951.]

*Decided July 15, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Isidore Ginsberg,* with whom were *Ginsberg and Ginsberg* on the brief, for appellant.

*Morris A. Baker,* with whom was *Alvin Solomon* on the brief, for appellee.

MARBURY, C. J., delivered the opinion of the Court.

This is a complainant's appeal from the denial of her claim for a divorce *a mensa,* and alimony, filed against her husband in the Circuit Court No. 2 of Baltimore City.

The parties were married on February 4, 1950. They have no children. They own, as tenants by the entireties, a three-story apartment house on Lennox Street in the City of Baltimore. They lived in one of these apartments, and the others they rented. The wife has been managing this property since it was bought, but, up to the time of the hearing below, there was no profit because it was necessary to fix it up, and there was a mortgage on it. However, the wife testified there would be some profit in its operation in the future. When the parties were married, both of them worked at the Arthur Murray Dancing Studio. Both left, but the wife is now working there again part time. The husband was working at the Bethlehem Steel Company's shipbuilding plant,

was eventually taken into the service, and it is not quite clear where he is now.

The testimony indicates that the parties have been separated six times between February 4, 1950, and March, 1951, when the last separation occurred. Most of these separations were occasioned by very trivial quarrels. The wife did not think her husband was sufficiently demonstrative in his gestures of affection towards her, and objected, perhaps naturally, to his criticisms of her method of running the house. The chronological order of these separations is not clear from the record, but once, perhaps the first time, the husband went out and stayed for a few hours only, and once the wife left. In January, 1951, the husband left for two months, but then came back in March, and they were together for a week, and then separated again. Shortly after that, around April 3, he had to go to Chicago for the shipbuilding company, and he then saw his wife in presence of his mother-in-law. He constantly came back to see his wife when they were separated, and one of her complaints was that he came late at night, after his working hours, and woke her up. He was working until 11:30 at night. At the discussion just before he went to Chicago, where he had to stay forty days, he attempted to effect a reconciliation, but, according to his testimony, she said: "Well, if you really love me, you can prove it to me by signing over the property, and that is all I need." This testimony was not denied by the wife, and the mother-in-law said only that she did not remember those words. She did, however, state that the husband wanted to spend the night, but his wife would not let her (the mother-in-law) leave the room. The wife said she told her husband that she had made up her mind that she must have her divorce, and if her husband would give her a divorce, that would convince her that he loved her, and that she would re-marry him. During the time the husband was in Chicago, the wife brought the suit for divorce, and when he came back, he got in touch with her, and

they went to the movies and then to a cabaret, but they did not reach any reconciliation at that time. She said that it was not mentioned, because her husband had just gotten a notice from the Draft Board, and he was concerned about going into the service. It seems to be the testimony of both of the parties that he is still trying to effect reconciliation, and he said so on the witness stand, although offers to reconcile at the trial are not usually given much weight.

The husband undeniably has been the party who has left the family home, but the evidence is not convincing that he left with the intention of staying away permanently. Abandonment includes not only the ending of living together, but the intention of the acting party thereby to desert the other. *Miller v. Miller,* 185 Md. 79, 82, 42 A. 2d 915. Courts do not grant divorces for slight or trivial reasons, and we are unable to find in this record any compelling reason why these parties should have separated.

The chancellor, who saw the witnesses, said, among other things: "The whole trouble in this case is temperament. * * * The husband in this case I think has failed to recognize the actual fact and the realities of the fact that married life is not going to be a one-sided affair, in which all the demands can be made on the other spouse and none upon himself. To a certain extent the wife fails to recognize the same thing, in my opinion. If the Court were to weigh the respective faults of these two parties, judging from the evidence, I would have to say that the faults of the defendant weigh more heavily than those of the plaintiff. But the case cannot be decided in just that way. * * * Bearing in mind that the husband cannot simply leave his wife every time he feels like doing it and expect her to take him back every time he expresses a desire to come back, it is still true that if the situation is such that his efforts at reconciliation are sincere, and she refuses to take him back without just grounds, she is not entitled to a divorce. My conclusion is that he has made sincere

offers of reconciliation, and further that the evidence does not show facts to justify her in not accepting those offers. * * * I think their troubles have been due to faults on the part of both. I think the best thing that could happen to both of them would be to take account of themselves much more than they have in the past, and realize that each party to a marriage must give here and take there. I think this applies particularly to the husband, who, as I said before, has been more childish than his wife. But it is her conduct as well as his that caused the whole trouble."

Without further discussion, and without relating all the minor episodes which caused friction between the parties, we think it is sufficient for us to say that we concur in the views of the chancellor as to the difficulties of these parties and their causes, and we will affirm his action in declining to give the wife a divorce or alimony, and in dismissing the bill.

*Decree affirmed, costs to be paid by the appellee.*