## LEE *v.* LEE

[No. 276, September Term, 1958.]

*Decided June 26, 1959.*

*Motion for rehearing filed July 27, 1959, denied September 16, 1959.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*William O. E. Sterling,* for appellant.

*Robert E. Wigginton,* with whom were *Loker, Wigginton & Loker* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

This is an appeal from the Circuit Court for St. Mary's County, which, by its decree, denied Charles L. Lee (the husband) a divorce from Thelma C. Lee (the wife), ordered the husband to support his wife and pay her attorney a counsel fee, and entered a money judgment against the husband in favor of the wife for the arrearages of alimony which had accrued under a Florida decree.

The husband appealed, claiming that he was entitled to a divorce *a vinculo matrimonii* from his wife on the ground of a voluntary separation and that the court erred when it entered judgment against him for arrearages of alimony. The wife contends that the separation of the parties was not voluntary since the husband abandoned her without just cause and that the entry of the judgment was proper.

The parties, who were married on December 2, 1927, at Norfolk, Virginia, had a relatively harmonious relationship until about 1940 when, with the outbreak of World War II, the husband—a Captain in the Navy—was required to move frequently from one post to another, and to be absent from home on sea duty for extended periods. The wife, originally a resident of Pensacola, Florida, often returned to the home of her mother during the absences of her husband. The husband claimed that when he was stationed in this country his wife would not always join him and that this caused arguments and difficulties to arise between them. The marriage relationship

was not terminated during this period, however, because of mutual concern for their son who was then under age. But, when the son was nearly grown, the parties, at a conference in Florida, decided that they should live separate and apart. As a result of this decision they entered into a separation agreement on February 1, 1950, under the terms of which it was recited that "in contemplation of separating" they desired to "settle their property rights by mutual agreement," which they did. Among other things, the husband agreed to give his wife an allotment of $350 per month for eight months, after which a permanent allotment of $225 per month was to continue as long as the wife did not remarry. The husband complied with the provision as to the allotment payments until he retired from the Navy in 1954, when the payments were reduced from $225 to $125 per month in accordance with an alleged oral ante-separation understanding.

On May 18, 1950, a few months after the signing of the separation agreement, the husband filed suit for a divorce in the Court of Record for Escambia County, Florida, on the ground of extreme cruelty. The wife answered the complaint by denying the allegations pertaining to her conduct and affirmatively alleging that her husband had "willfully and without cause absented himself from the [wife]." The Florida court, in denying the relief sought by the husband, noted that the "equities" were with the wife; approved and confirmed the separation agreement; ordered the husband to pay his wife $350 for three months and $225 on the first day of each month thereafter until the wife should remarry or die, "as alimony * * * to be used * * * for her support and maintenance"; required the husband to pay his wife a counsel fee of $200; and reserved jurisdiction for one year "for the purpose of entertaining the application" of the wife for a divorce. A subsequent attempt, on February 26, 1955, to have the Florida court modify the decree resulted in another decree to the effect that the husband was in contempt; a finding that he was $700 in arrears as of March 1, 1955; and an order that the modification proceedings should be stayed until the husband had purged himself of contempt by making all payments required by the original decree.

On August 31, 1955, the husband filed a bill in the lower court seeking an absolute divorce on the ground that he and his wife had voluntarily lived separate and apart, without cohabitation, for more than three consecutive years. The wife, in addition to denying that the separation was voluntary, set forth in her answer the nature of the Florida divorce proceedings and the results thereof and alleged that that decree was *res judicata* as to the divorce action in this State. The answer further sought confirmation of the Florida decree; an award of alimony in accordance with the separation agreement; a counsel fee; and a monetary decree for the arrearages of alimony. At a preliminary hearing, the chancellor denied the wife's motion for summary judgment and ruled that the plea of *res judicata* was without merit. In a subsequent petition the wife set out in detail the status of her claim for alimony under the Florida decree. The husband, in reply to the petition, alleged that he had been paying alimony at the rate of $125 per month in accordance with the ante-separation understanding between the parties and that such reduced payments were commensurate with his "means and income."

At the trial on the merits there was an oral stipulation that the husband was a bona fide resident of Maryland. Other than the husband, there were no witnesses in attendance. Other than the testimony of the husband there was no oral evidence except the deposition of his Florida attorney and the deposition of the wife. A copy of the separation agreement and an exemplified copy of the Florida proceedings were also received in evidence. An objection to the introduction into evidence of much of the testimony contained in the attorney's deposition on the ground that it tended to vary the terms of the separation agreement was not ruled on by the chancellor, however, in his opinion he concluded that the oral understanding made prior to the execution of the separation agreement— with respect to the increase or decrease of the allotment to the wife depending on whether the husband became an Admiral or was retired from active duty—had merged into the written separation agreement. The husband—in addition to the facts hereinbefore stated—testified at the trial that he and his wife had lived separate and apart since February 2, 1950; that he

had not cohabited with her during the interval; and that there was no reasonable expectation of a reconciliation. But there was no corroboration of the husband's testimony other than that afforded by the separation agreement.

On the divorce issue, even though he was inclined to believe that the parties had separated pursuant to the separation agreement, the chancellor was of the opinion that he was required—under the full faith and credit clause of the Constitution of the United States—to accept the decree of the Florida court as binding on him. For this reason, the chancellor denied the husband a divorce.

With respect to the future payments of alimony, the chancellor, relying on *Harris v. Harris,* 213 Md. 592, 132 A. 2d 597 (1957), and *McCabe v. McCabe,* 210 Md. 308, 123 A. 2d 447 (1956), concluded that he had power to enforce the provisions of the Florida decree. The chancellor also found as a fact that the husband was not financially able to continue making monthly payments of $225, but he explicitly did not modify the terms and provisions of the Florida decree. Even if we assume, without deciding, that the chancellor had power to modify that decree, it is certain he did not do so. Instead, he merely decided that he was not justified in punishing the husband for contempt for failure to continue the $225 payments, and ordered payment of a lesser sum—$150 instead of the $125 the husband had actually been paying. However, in so doing, the chancellor expressly stated that the extension of the sanction did not expunge the obligations due the wife under the terms and provisions of the separation agreement or the Florida decree. At the same time the chancellor explained that the reduction in amount meant that, so long as the husband paid the reduced sum, he would not be punished in a contempt proceeding in this jurisdiction for failure to pay more.

As to the arrearages of alimony which had accrued, the chancellor recognized that he was required to enforce the Florida decree, and directed entry of the $5100 judgment.

### (i). Divorce Issue.

On this issue, the chancellor, because he believed that he

was required to give full faith and credit to the Florida decree, denied the husband a divorce. It is unnecessary, however, to pass upon the correctness of that ruling for, as we see it, the decree of the lower court should be affirmed for a different reason. Since the husband failed to corroborate his claim for relief, the chancellor was without authority to grant a divorce in any event. This is so because the separation agreement merely recited that the parties were about to separate and had mutually agreed to settle their property rights. There was no recital nor an agreement that the separation was voluntary. The separation could have been caused by misconduct either on the part of the husband or the wife or both. Actually, the wife, besides denying the voluntary nature of the agreement, claimed that the husband intended to leave her in any event and so announced, and that she executed the agreement merely to protect her financial and property rights since she was faced with a situation she could not control. This denotes acquiescence, not agreement. The situation here was not the same as it was in *Hahn v. Hahn,* 192 Md. 561, 64 A. 2d 739 (1949), on which the husband relied to support his claim for a divorce. There, the husband admitted that the separation was voluntary. Moreover, there was substantial corroboration of the wife's testimony by a person who was not a party. Here, the agreement, insofar as the separation of the parties was concerned, proved nothing. Even if we assume, without deciding, that the execution of a separation agreement may in some instances corroborate a separation by mutual consent, it certainly did not do so in this case. While only slight corroboration is required, it cannot be dispensed with. *Zulauf v. Zulauf,* 218 Md. 99, 145 A. 2d 414 (1958). Cf. Rule 1190 f.

### (ii). Alimony Issue.

On this issue, the husband appealed only the entry of the monetary judgment for the arrearages of alimony. As to it, the husband insists, because the Florida court still retained jurisdiction of his pending, though stayed, petition for modification, that that court could alter or change its alimony decree, and contends that the Maryland court lacked authority to enter judgment. We disagree.

In the first place, it is clear that the pending modification proceedings did not toll the vesting of the installments of alimony which continued to accrue month after month. The *second* Florida decree not only declared that the husband was in contempt for failure to pay the $700 due as of March 1, 1955, but specifically provided that the proceedings would be stayed *until* the husband had made "all payments required to be made" under the *first* decree. There was no proof in the case at bar that the husband had ever purged himself of contempt nor was there any proof—indeed it was admitted—that he had not paid in full the alimony payments which continued to accrue and vest under the Florida decree after March 1, 1955. Moreover, in Florida, an alimony decree may not be modified except upon "a strong showing that the husband's ability to pay has depreciated." *Chastian v. Chastian,* 73 S. 2d 66 (Fla., 1954). It is not until then, under the Florida statute [F.S.A. (1951), § 65.15], that a decree for alimony is deemed to have been modified "for the purpose of all actions or proceedings of every nature and wherever instituted, whether within or without * * * [the] state."

Secondly, since the authority to modify a foreign alimony decree, insofar as future payments are concerned, does not apply to payments which have already accrued and vested, in the absence of proof that the foreign court could retroactively modify its decree or had done so prior to the maturity of the installments claimed to be due, the wife was entitled to judgment. There was no such proof, and there could be none in this case, because Florida holds that, even though a decree is subject to modification as to future payments, the right to alimony already accrued is vested, and a court is without power to modify past-due payments. *Andruss v. Andruss,* 144 Fla. 641, 198 So. 213 (1940). *Accord, Blanton v. Blanton,* 154 Fla. 750, 18 S. 2d 902 (1944).

That a court in this State will enforce an alimony decree of another state for the amount lawfully due and unpaid thereunder was settled by the decision in *Rosenberg v. Rosenberg,* 152 Md. 49, 135 A. 840 (1927). Therein, citing *Sistare v. Sistare,* 218 U. S. 1 (1910), it was firmly established that, in the absence of proof to the contrary, it will be presumed that

a foreign decree for alimony is not subject to annulment or modification as to the installments which had accrued and are unpaid, so as to preclude an action in Maryland to recover such unpaid installments.[1]  See also *McCabe v. McCabe, supra,* in which it was further established that a court of equity is a proper forum in which to enforce a foreign decree for alimony accrued *and* to accrue.

For the reasons assigned the decree in its entirety will be affirmed.

*Decree affirmed, the appellant
to pay the costs.*

---

1. See Goodrich, *Conflict of Laws,* § 139 (1949), for an excellent paraphrazing of the rule for recovery laid down in *Sistare v. Sistare, supra.*