## FEDDER *v.* FEDDER

[No. 12, September Term, 1967.]

*Decided December 5, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES, FINAN and SINGLEY, JJ.

*Arthur W. Kupfer* for appellant.

*Fred Oken* for appellee.

HORNEY, J., delivered the opinion of the Court.

The basic question presented by this appeal is whether the actions of the parties during the more than eighteen-months period they had lived separate and apart were legally sufficient to justify an absolute divorce on the theory that there had been a mutual separation.

Lewis Fedder married Alice Fedder in December of 1960. It was the second marriage for both and no children were born of their marriage. They separated in December of 1963 and never lived together thereafter.

According to the husband, his wife became disenchanted with their marriage long before the final separation. She accused him of infidelity and he was unable to convince her that her suspicions were groundless. The separation began when the wife moved his personal effects out of their apartment in Adelphi into their automobile and telephoned him at his office in Frederick that he could get his belongings from the automobile whenever he desired but that he was not to enter the apartment again.

He went to live with his sister and brother-in-law in Baltimore. A day or so later he and the brother-in-law retrieved his clothes and personal effects from the automobile where the wife had placed them. Sometime thereafter he got an apartment with his mother.

According to the wife, her husband moved into the apartment she owned and had maintained with her minor daughter prior to the marriage. They got along well for a period of time until an uneasy atmosphere developed between them which led to a distrustful situation. Eventually, the wife, fearing for her life as the result of constant harassment and physical abuse, left the apartment and sought other living accommodations. Thereafter, she filed a bill for a partial divorce on the ground of constructive desertion, and the husband, in answer thereto, filed a cross-bill claiming that the parties had mutually agreed to separate. More than two years thereafter, the wife filed a belated supplemental bill for alimony.

When the case came on for trial the wife did not appear and the case proceeded without her. The husband testified that he was in love with his wife and earnestly tried to bring about a reconciliation a number of times. He thought he had prevailed upon her to reconcile on Christmas Eve 1963, but when he arrived in Adelphi bearing gifts he found himself locked out of the apartment and again accused by his wife of infidelity. He continued his efforts for a reconciliation, although less frequently, until the middle of February 1964 when, coming to the conclusion that further efforts were useless, he accepted the separation as final and prepared to terminate the marital relationship. Toward that end he visited his wife while she was confined in a Washington hospital for minor surgery. At the conclusion of the visit he told her he would not be seeing her again and she indicated that a mutual parting was agreeable to her. That was the last time they saw each other. His brother-in-law had accompanied him to see his wife, but, not having remained in the hospital with them during the visit, he was unable to testify as to the colloquy between the estranged parties.

At the conclusion of the case for the husband, it was continued for a month. At that time the wife appeared and testified that there never had been an agreement between them to vol-

untarily live separate and apart and claimed alimony should a divorce be granted. The chancellor, after commenting that the original and supplemental bills of the wife for a partial divorce and for alimony had been dismissed for want of prosecution, granted the husband an absolute divorce on the ground that the parties, having drifted apart and having let the marriage disintegrate, had in effect voluntarily separated and refused to allow alimony because the wife was self-supporting.

The reasoning of the chancellor was stated thuswise—

> "A voluntary separation does not have to be written down in black and white by mutual agreement; it does not have to be reached at with calmness and courtesy between the parties. An agreement to live separate and apart can really be reached by the actions of the parties which they themselves tacitly approve, and I think that is what happened in this case. After a stormy several years of marriage during which they actually did not live together all the time, the formal end finally came in December of 1963. I think there was tacit agreement on both sides that the marriage was over and they just drifted apart and that is what happened, and that since then each party has resigned himself or herself to his separate state."

Since, as the adage suggests, actions often speak as loud as words, it may be that the acts of the parties in some cases might suffice to verify an agreement to separate, but that was not the situation here. While the continuation of the parties to live separate and apart for more than eighteen months was an indication that the husband and wife had orally agreed not to see each other again, the difficulty is that the evidence as to that fact was not corroborated. The husband alone testified as to the mutuality of the separation and his testimony was not corroborated by the testimony of a person not a party to the divorce proceedings as Maryland Rule S75 explicitly requires. Moreover, the evidence—concerning the attitude of the wife toward a reconciliation and her antipathy toward a resumption of the marriage—relied on by the husband to support an inference

that she concurred in the separation of the parties was also his testimony and was likewise not corroborated.

Time after time, we have said that only slight corroboration is required but that it cannot be dispensed with altogether. See *Kerber v. Kerber*, 240 Md. 312, 214 A. 2d 164 (1965) ; *Comulada v. Comulada*, 234 Md. 287, 199 A. 2d 197 (1964) ; *Lee v. Lee*, 220 Md. 325, 152 A. 2d 561 (1959) ; and other cases referred to in the footnotes to the rule.

*Decree reversed; appellee to pay the costs.*