## SOLES *v.* SOLES

[No. 94, September Term, 1967.]

*Decided February 13, 1968.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES, FINAN and SINGLEY, JJ.

*H. Edward Chozick,* with whom was *William C. Staley* on the brief, for appellant.

Submitted on brief by *George L. Quinn, Jr.,* for appellee.

BARNES, J., delivered the opinion of the Court.

The question in this appeal is whether there was sufficient corroboration of the testimony in regard to the reason for the wife's leaving the marital domicile to support the Chancellor's decree of divorce a vinculo matrimonii on the ground of desertion.

The husband and appellant, Robert E. Soles, defendant in the Circuit Court for Prince George's County in a suit for a divorce a vinculo matrimonii filed by the wife, Marie E. Soles, appellee, on November 22, 1966, was married to the wife, then a widow, on March 30, 1957, in Montgomery County. No children were born as a result of the marriage. The wife, however, had four children as the result of her previous marriage.

The bill of complaint filed by the wife alleged that on or about March 1, 1965, the husband "by his conduct, which made plaintiff's life unbearable, and which seriously impaired her physical and mental health and well being," did desert and abandon the wife, which desertion had continued uninterruptedly since that time, and that there was no hope or expectation of reconciliation. Since March 1, 1965, it was alleged, the husband on numerous occasions had harrassed and threatened the wife over the telephone at her place of employment and at her home, had accosted her on the street and in her automobile, had threatened her life and the life of her daughter by the wife's previous marriage, all of which have placed the wife in great fear of her safety and affected her physical and mental well-being as well

as adversely affecting the wife's efficiency in her employment. The bill of complaint also alleged the joint ownership of various personal property. The wife prayed for a divorce a vinculo matrimonii, the restoration of her name prior to her marriage, i.e., Marie E. Larman, an injunction against molestation and threats by the husband, the adjustment of property rights and other relief.

The husband filed an answer denying the desertion. The suit came on for hearing on March 1, 1967, before the Chancellor (Parker, J.) who rendered an oral opinion ruling in favor of the wife and granting the relief prayed for in her bill of complaint. The final decree was signed and filed by the Chancellor on March 9, 1967, and an appeal was duly perfected by the husband to this Court.

The separation, and its continuance for the required period of time, was amply proved and corroborated, but the husband contends that the proof of the cause justifying the wife's leaving the marriage domicile on or about March 1, 1965, namely the husband's abnormal sex relations with his wife and demands upon her for such relations, were not sufficiently corroborated to support the Chancellor's finding that the wife was justified in leaving the marriage domicile and that the husband was guilty of constructive desertion. We disagree with the husband's contention and will affirm the Chancellor's decree.

The wife, in addition to her testimony of threats of violence and unfounded accusations that she was running around with other men, testified that the principal reason for her leaving her husband was his abnormal sex relations with her and his demands that she submit to them. Although reluctant to give the details of the abnormal sex relations, the wife, in responding to a question by the Court, stated that the husband "gets more satisfaction from oral sex relations" than she considered normal. She testified that her husband required her to submit to this relationship, and, further, that this had gone on for a long period of time and indeed "since the day we were married." The wife's first separation from her husband came about, she testified, when he molested her daughter by her previous marriage, then aged 14. This molestation caused the daughter "to have a nervous breakdown" and, as a result, the daughter "had

to be under psychiatric care for a year." The wife also testified to the husband's harrassment over the telephone while she was at work and on the parking lot after she left work and his vulgar demands on those occasions for sexual intercourse.

Although the husband denied making any threats or putting his wife in fear of bodily harm, he did admit in his testimony that he had made "abnormal sexual advances" to his wife.

The wife produced two corroborating witnesses, her son by her previous marriage, John William Larman, and a co-worker, Mrs. Sally J. Lewis.

Mr. Larman, who lived with his mother and his step-father from the time of their marriage in 1957 until sometime in 1962, testified that in 1962 he was in the Armed Forces stationed at Arlington, Virginia and that during his service he visited the family home on the average of once a month. Since March, 1965, he had visited his mother at her apartment once a week and kept in touch with her by telephone. The husband was never there. He testified in regard to the husband's accusations of his mother's running around with other men, his calling her names, and of her fear of her husband. He found his mother a number of times sitting in her apartment with no lights on. "She was afraid even to turn the lights on." Mr. Larman did not believe that there was any reasonable hope or expectation of a reconciliation. He testified that around 1960 there was some trouble between the husband and Mr. Larman's sister. He stated: "My sister, younger sister, got quite hysterical and after a long period of questioning by my mother and I we found out my step-father had been molesting her. When he was confronted with it, he never, to my knowledge, said no he didn't."

Mrs. Lewis had visited the wife since March, 1965, on an average of once every two weeks and saw no evidence of a man being in the home. In March, 1965, she listened on the telephone at Mrs. Soles' request and heard him say: "How about some this weekend" and "would you like a little baby." She also saw Mr. Soles on the business parking lot in the evening. After these episodes Mrs. Soles would "become very upset."

To establish constructive desertion and abandonment it is the Chancellor's duty "to determine upon the evidence whether either of the parties to the suit has been guilty of such conduct

as would make a continuance of the marital relationship inconsistent with the health, self-respect and reasonable comfort of the other." *Geisey v. Geisey,* 190 Md. 618, 627, 59 A. 2d 319, 323 (1948).

It is well established that the practice of abnormal sex relations by one spouse and a demand for their continuance is indeed inconsistent with the health, self-respect and comfort of the other spouse and justifies the other spouse's leaving the marriage domicile in order to preserve that spouse's health and self-respect. As Judge Markell, for the Court, aptly stated in *Maranto v. Maranto,* 192 Md. 214, 220-21, 64 A. 2d 144, 146 (1949):

> "Defendant's [the husband's] testimony, the uncontradicted testimony of plaintiff's brother-in-law and the testimony of plaintiff's sister indicate that sex is an obsession with defendant, regardless of time, place, or circumstance, at home or in company, or on the witness stand, in conversation and behavior, not only to an abnormal degree but in abnormal ways. The sister testified to a remark by defendant (only partly and unconvincingly denied by him) which is an admission of plaintiff's charge. Defendant admits that at the conference of parties and lawyers in 1945 perverted practices were discussed. The stormy married life of two paranoiacs for nine years could hardly have been caused by a single act, committed by consent at the beginning of the marriage and never repeated. Such an act could not have been a subject of 'reconciliation' after eight years. We think plaintiff's testimony is sufficiently corroborated by her sister and brother-in-law. Manifestly this conduct of defendant not only imperiled plaintiff's health, mental if not physical, but aside from health, made life unbearable. It justified plaintiff in terminating marital relations and constitutes constructive desertion on defendant's part."

As the wife testified in regard to the abnormal sex relations of her husband, beginning on their marriage night and demanded thereafter by the husband (and this is substantially admitted by

the husband in his testimony), the only question remaining is whether there is sufficient corroboration of this fact in the record in this case.

Maryland Rule S75 provides as follows:

"A final decree of divorce shall not be passed upon the *testimony of the plaintiff alone,* nor shall *the admissions of a defendant in an action for divorce be taken of themselves as conclusive proof* of the facts charged as the ground of the action, but in all cases *testimony of a person not a party in corroboration of the plaintiff shall be required."* (Emphasis supplied).

We have had occasion to consider this rule requiring corroboration of the plaintiff's testimony by a person not a party in several recent cases.

In *Comulada v. Comulada,* 234 Md. 287, 293, 199 A. 2d 197, 200 (1964), Judge Horney, for the Court, reviewed the legislative and judicial history of Maryland Rule S75, and after a careful review of the prior Maryland cases, stated the effect of the rule to be as follows:

"All of the cases hold that the testimony of the plaintiff must be corroborated and that corroboration cannot be dispensed with altogether. [Citing cases]. But in contested cases, where there is no possibility of collusion, it has been consistently held that only slight evidence is required to corroborate the testimony of the complaining spouse. [Citing cases].

"In some cases, such as *Kremelberg v. Kremelberg,* 52 Md. 553 (1879) and *Fassett v. Fassett,* 143 Md. 35, 121 Atl. 859 (1923), decrees of divorce were granted on evidence consisting largely of admissions of adultery. In at least two cases, *Maranto v. Maranto,* 192 Md. 214, 64 A. 2d 144 (1949) and *Cullotta v. Cullotta,* 193 Md. 374, 66 A. 2d 919 (1949), it was stated, without any qualification as to its trustworthiness, that the corroboration required may be found in evidence of admissions by the other spouse. But in other cases in which it was held that admissions were

acceptable as corroborative evidence, it was further pointed out that such evidence, unsupported by other proof, should be received with utmost circumspection and caution. See *Schriver v. Schriver,* 185 Md. 227, 44 A. 2d 479 (1945) ; *Zulauf v. Zulauf,* 218 Md. 99, 145 A. 2d 414 (1958)."

See also *Hoffman v. Hoffman,* 241 Md. 118, 121, 215 A. 2d 808, 810-11 (1966) ; *Nolte v. Nolte,* 246 Md. 328, 332-333, 228 A. 2d 240, 242 (1967) ; and *Murphy v. Murphy,* 248 Md. 455, 237 A. 2d 523 (1968).

Applying these principles to the present case, we have a factual situation in which the case is clearly a contested one. The cause for the separation of the parties is an offensive one. The chances of collusion in this type of case are very remote indeed and it must be remembered that the *purpose* of Maryland Rule S75 is to prevent collusion in obtaining divorces in this State. Under these circumstances only slight corroboration is required. As the marital offense charged is not likely to occur in the presence of witnesses, it must of necessity be corroborated by either admissions or by inference. Although the husband's admission under oath and in open court in a hotly contested case cannot under Rule S75 be taken *of itself* as *conclusive* proof of the unsavory fact, it is not to be ignored. The testimony of the wife's son in regard to the sexual molestation of his fourteen year old sister by her step-father, and the absence of a denial of this event by the husband either at the time of commission or in his testimony in this case, corroborates the fact that the husband is a highly and overly sexed person who would be likely to engage in abnormal sexual acts with his wife and demand their continuance. Then too, the testimony of Mrs. Lewis, the co-worker of the wife, in regard to the husband's telephone calls to his wife at her place of work and his vulgar demands for sexual relations with the wife tend to corroborate the fact that the husband is highly or overly sexed and by inference, at least, corroborates the wife's testimony. See *Maranto v. Maranto, supra.*

We are of the opinion that in this case there was at least slight corroboration of the wife's testimony in regard to the

justifiable cause of her leaving the marital domicile and this is all that Rule S75 requires. The Chancellor was therefore justified in concluding that the wife had established her husband's desertion and abandonment, which had continued uninterruptedly for the required 18 month period, and that the separation was without reasonable hope or expectation of reconciliation. The Chancellor properly granted the wife a decree for a divorce a vinculo matrimonii. As we have indicated, there is no challenge to the other provisions of the decree.

*Decree affirmed, the appellant to pay the costs.*