FULLER *v.* FULLER

[No. 101, September Term, 1967.]

*Decided February 14, 1968.*

The cause was argued before HAMMOND, C. J., and HOR-NEY, MARBURY, BARNES, FINAN and SINGLEY, JJ.

*Harry Goldman, Jr.,* for appellant.

*Theodore G. Bloom,* with whom were *Albert J. Goodman* and *Goodman & Bloom* on the brief, for appellee.

MARBURY, J., delivered the opinion of the Court.

The legal battle that precipitated this appeal is a product of domestic strife that caused the litigants herein first to engage in physical violence and finally to seek a divorce *a mensa et thoro* through the courts of this State.

Mr. and Mrs. Fuller were married October 18, 1952, in Annapolis. Mr. Fuller was engaged in an accounting business in which his wife took an active part until it was sold in 1965. Early in June of 1966 Mr. Fuller became disturbed by the way his financial affairs were being handled, and upon making an analysis of his books and bank statements ascertained that during the period of January 1, 1966, through May 31 of the same year, his wife, who at that time had almost complete charge of his finances, had given him $173 while she had spent $3400 for her personal benefit, including $1500 for country club stock which he had instructed her not to buy. Being in doubt as to what steps he should take, he consulted an attorney and acting on his advice, Mr. Fuller closed out a joint account in his and his wife's name and deposited the funds in his personal account. He also confiscated from his wife's purse all credit cards and took steps to preclude her from obtaining credit on his account with area merchants.

On June 6, 1966, when she learned of her husband's actions in removing her from a position of financial control, Mrs. Fuller, who was under the care of a psychiatrist at the time, became enraged and with an admitted intention to kill her husband, attacked him. She was prevented from using a knife and gun on her husband only by his defensive maneuvers and by his leaving the premises in his car. Mr. Fuller returned that evening accompanied by a policeman and got some of his clothes, telling his wife at this time that he was leaving temporarily. After spending the next four days at his mother's, Mr. Fuller returned home, having in the meantime consulted his wife's psychiatrist, who thought that it would be safe to do so. On

30

his return, all attempts to reconcile were rejected by her and on June 18, while he was away on a business trip, she moved from their home taking with her all her clothes, all the food and a substantial amount of furniture, and moved into an apartment.

In the meantime, on June 8, 1966, Mrs. Fuller had obtained the services of an attorney who filed a bill for divorce *a mensa et thoro* on her behalf, alleging that Mr. Fuller had deserted her and left her destitute without means of support. On June 29, 1966, Mr. Fuller filed a cross-bill alleging desertion by his wife on June 18, 1966, and further, that in addition to paying household expenses that he was giving her $50 a week and thereby was providing adequate support.

After hearing testimony by the parties and their witnesses, Judge Pitcher found that the acts of the husband in withdrawing financial control from his wife did not amount to desertion, especially in light of the $50 per week that he provided for her. He also found that leaving the home temporarily on June 6, 1966, did not constitute desertion by him since he intended to and actually did return four days later, and left only to protect his personal safety.

With respect to the cross-bill, Judge Pitcher ruled that on the undisputed facts set forth above, that by moving from their home on June 18 shortly after her attack on her husband, without justification and with no intention to return, that Mrs. Fuller had deserted her husband. Accordingly, he dismissed the wife's bill of complaint and awarded the husband a divorce *a mensa et thoro* on his cross-bill, on the ground of her desertion of him.

On appeal before us the main thrust of the appellant's argument is that the appellee's evidence was not sufficiently corroborated by a non-party witness. To show the desertion of a spouse two elements need be present. In *Zulauf v. Zulauf*, 218 Md. 99, 105, 145 A. 2d 414, Judge Horney said, speaking for this Court:

"Abandonment and desertion as grounds for a divorce contain two inherent elements: (i) the ending of co-habitation and (ii) the intention of the offending party

> to desert. *Givner v. Givner,* 201 Md. 333, 93 A. 2d 563 (1953). See also *Thurlow v. Thurlow,* 212 Md. 222, 129 A. 2d 170 (1957); *Evan v. Evan,* 200 Md. 473, 90 A. 2d 178 (1952)."

In the recent case of *Taylor v. Taylor,* 238 Md. 312, 315, 208 A. 2d 685, we said: "Every element necessary to justify the relief sought must be corroborated. *Hodges v. Hodges, supra* [213 Md. 322]; *Kelsey v. Kelsey,* 186 Md. 324, 328, 46 A. 2d 627 (1946)." However, in a hotly contested case where there is little chance of collusion, slight corroboration will be sufficient. *Fedder v. Fedder,* 248 Md. 162, 235 A. 2d 553; *Comulada v. Comulada,* 234 Md. 287, 199 A. 2d 197; *Heinmuller v. Heinmuller,* 133 Md. 491, 105 Atl. 745.

There is no dispute that there was ample evidence of an ending of cohabitation. This was corroborated by the testimony of Timothy Charles Fuller, who testified that his mother moved from the marital home in June of 1966 and had not returned; that upon returning from his enlistment in the Navy on August 12 that he lived with his mother for about a week and then went to live for a while with his adoptive father because he was unable to get along with his mother.

The remaining element to be corroborated was the intent on the part of Mrs. Fuller to desert on June 18. The actual intent of a person is a state of mind and as such can be shown to the world at large only through the outward acts and manifestations of the one who has formed the intent. This may be shown by what one has said or by inferring intent from what one has done. In many respects a person's actions may be more reliable indications of his true intent than what he had said to a third person, for one's intent as communicated to a third person today can easily be recanted tomorrow with nothing lost, while his acts, once done, are irrevocable and their consequences are there for the world to see.

In the instant case but one inference can be drawn from the acts of Mrs. Fuller. By leaving the home provided by her husband, taking with her the food and furniture, and by her persistent disregard for his entreaties to return and failure to even answer his letters she left no doubt of her intent to put an end to the existing marital relations.

The appellant also claims that her husband is barred from the relief granted by recrimination. This defense is available only where the spouse seeking relief is guilty of a marital offense that would give the other party grounds for a divorce. A review of the record shows no such offense on the part of Mr. Fuller.

While the appellant's counsel insists that certain evidence was obtained as a result of an illegal wiretap we need not consider this aspect of the case since Judge Pitcher found it unnecessary to consider the contents of these alleged calls, having ample grounds from other sources on which to base his decision.

*Decree affirmed, appellee to pay the costs.*